IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-01249-REB-KLM

JANEEN MEDINA, individually, on behalf of all others similarly situated, and on behalf
of the CHI Plans,

        Plaintiff,

                v.

CATHOLIC HEALTH INITIATIVES, a Colorado corporation,
PATRICIA G. WEBB,
CAROL KEENAN, and
JOHN and JANE DOES, 1-20,

        Defendants.

---

## STIPULATED PROTECTIVE ORDER

---

### 1.    PURPOSES AND LIMITATIONS

The Defendants contend that disclosure and discovery activity in this action are likely to involve confidential, proprietary, or private information for which special protection from public disclosure is warranted (collectively "Protected Material" as defined herein). While Plaintiff disputes that contention, the parties intend for any such information to be afforded special protection from public disclosure and from use for any purpose other than prosecuting or defending claims in this action. The parties also intend to provide certain protections for privileged material that is inadvertently produced.  Furthermore, the parties stipulate and seek an order that will govern the protocol for producing electronically stored information ("ESI") and hard copy documents.

The parties acknowledge that this Protective Order does not confer blanket protections on all disclosures or responses to discovery. This Protective Order only extends to information or items that are entitled to protection under the applicable

legal principles. The parties further acknowledge, as set forth in Section 11 below, that this Protective Order creates no entitlement to file Protected Material under seal. D.C. COLO. L. Civ. R. 7.2 sets forth the procedures that must be followed and reflects the standards that will be applied when a party seeks permission from the Court to file Protected Material under seal or otherwise restrict access to any Protected Material.

The parties, in conducting discovery from third parties, shall attach to such discovery requests a copy of this Protective Order so as to apprise such third parties of their rights. A third party may designate as "Confidential" or "Highly Confidential - Attorneys' Eyes Only", pursuant to this Protective Order, any document, material, information or testimony submitted by the third party during discovery in this case.

2.    **DEFINITIONS**

2.1    Action: the above-captioned action, *Medina v. Catholic Health Initiatives, et al.*, No. 1:13-cv-01249-REB-KLM (D. Colo. filed May 10, 2013).

2.2    Party: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and outside counsel (and their support staff).

2.3    Disclosure or Discovery Material: all items or information, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things), that are produced or generated in disclosures or responses to discovery in this Action.

2.4    "Confidential" Information or Items: information (regardless of how generated, stored or maintained) or items not generally known to others, and that (i) the Designating Party would not normally reveal to third parties except in confidence, or has undertaken with others to maintain in confidence; or (ii) are protected by a right to privacy under federal or state law, or any other applicable privilege or right related to confidentiality or privacy. "Confidential" Information or Items include any form of trade secret or other confidential commercial information within the meaning of Fed. R. Civ. P.

26(c)(1)(G).  For example, "Confidential" Information or Items may include, but are not limited to, non-public information relating to: trade secrets; proprietary information; tax data; personnel; business information; personal financial information; or other personally sensitive information.

2.5     "Highly Confidential - Attorneys' Eyes Only" Information or Items: highly sensitive "Confidential" Information or Items, the disclosure of which to another Party or non-party would create a substantial risk of serious competitive injury to the Designating Party, as defined herein. "Highly Confidential - Attorneys' Eyes Only" designations should be used only for sensitive financial, competitive, or personnel information, which is not generally known by third parties and that the Designating Party would not normally reveal to third parties or would require third parties to maintain in confidence by agreements, policies, or procedures.  Subject to the foregoing limitations and by way of example, "Highly Confidential - Attorneys' Eyes Only" may include, but is not limited to, non-public information relating to: customer lists and information; customer account information; financial results or data; financial or business plans and strategies; projections or analyses; audited financials; financial models; financial statements; proposed strategic transactions or other business combinations; acquisition offers or expressions of interest; studies or analyses by internal or outside experts; competitive analyses; business and marketing plans and strategies; other highly sensitive or proprietary information.

2.6     Receiving Party: a Party that receives Disclosure or Discovery Material from a Designating Party, as defined herein.

2.7     Designating Party: a Party or non-party producing information or items and/or designating information or items for production as "Confidential" or "Highly Confidential - Attorneys' Eyes Only."

2.8     Protected Material: any Disclosure or Discovery Material that is designated as "Confidential" or "Highly Confidential - Attorneys' Eyes Only."

2.9    In-house Counsel: attorneys who are employees, contractors, or consultants of a Party for general purposes in addition to this specific Action.

2.10    Outside Counsel: attorneys who are not employees of a Party, but who are retained to represent or advise a Party in this Action and their paralegals, assistants, and other support staff.

2.11    Expert: a person who has been retained by a Party or its Outside Counsel to serve as an expert witness or as a consultant in this Action and who is not a past or a current employee of a Party or of a competitor of a Party and who, at the time of retention, is not anticipated to become an employee of a Party or a competitor of a Party. This definition includes a professional jury or trial consultant retained in connection with this Action.

2.12    PDF: electronic files of a file format called "Portable Document Format" developed by Adobe Systems Incorporated that can be viewed on Adobe Acrobat Reader and other related programs or viewers.

2.13    Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying; court reporting; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors.

2.14    CHI Plan or Plan: the defined benefit pension plan(s) sponsored by Catholic Health Initiatives ("CHI") and operated as or claimed to be "church plan(s)."

3.  **SCOPE**

The protections conferred by this Order cover not only Protected Material, but also any information copied or extracted from Protected Material, including all copies, excerpts, summaries, or compilations of Protected Material. These protections also cover testimony, conversations, or presentations by a Party or Counsel to or in court or in other settings that might reveal Protected Material.

4.  **DURATION**

Even after the termination of this Action, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.

5.  **DESIGNATING PROTECTED MATERIAL**

5.1  Exercise of Restraint and Care in Designating Protected Material for Protection. A Designating Party must take care to limit its designations to specific Protected Material that qualifies for protection under the appropriate standards. If it comes to a Designating Party's attention that Protected Material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, that Party must promptly notify all other Parties that it is withdrawing or re-designating the mistaken designation.

5.2  Manner and Timing of Designations. Except as otherwise provided in this Order, or as otherwise stipulated or ordered, Protected Material must be designated before it is produced. Designation in conformity with this Order requires that:

(a)  for information in documentary form or in documents produced in electronic form (apart from transcripts of depositions or other pretrial or trial proceedings), the Designating Party affix the legend "Confidential" or "Highly Confidential - Attorneys' Eyes Only" on each page that contains Protected Material.

(b)  for testimony given in deposition or in other pretrial or trial proceedings, the Designating Party (or the Party or non-party whose confidential

9

information is being disclosed by the deponent) must identify the specific portions of the testimony as to which protection is sought at the time of the testimony or in writing within three (3) business days, or such other time as is agreed upon by Outside Counsel for all the Parties, after receiving the official final deposition transcript. Only those portions of the testimony that are appropriately designated for protection shall be covered by the provisions of this Order. Unless the Parties otherwise agree, the entire transcript of all depositions shall be deemed designated as "Highly Confidential - Attorneys' Eyes Only" until the three (3) business day deadline for designation has expired. No deposition transcript may be read by anyone other than the deponent, the deponent's counsel who was present at the deposition, Outside Counsel for a Party, and those qualified to see "Highly Confidential - Attorneys' Eyes Only" material under Section 7 during the three (3) business day period, unless otherwise agreed upon among the Outside Counsel of the Parties. Transcript pages containing Protected Material must be separately bound by the court reporter, who must affix to each such page the legend "Confidential" or "Highly Confidential - Attorneys' Eyes Only," as instructed by the Party or non-party seeking protection.

(c) for information produced in some form other than documentary, and for any other tangible items, except as otherwise provided in this Order, the Designating Party must affix, in a prominent place on the exterior of the container(s) or media in which the information or item is stored, the legend "Confidential" or "Highly Confidential - Attorneys' Eyes Only."

5.3 Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate Protected Material does not, standing alone, waive the Designating Party's right to secure protection under this Order. If Protected Material is appropriately designated as "Confidential" or "Highly Confidential - Attorneys' Eyes Only" after the Protected Material was initially produced, the Receiving Party, on timely

notification of the designation, must make reasonable efforts to assure that the Protected Material is treated in accordance with the provisions of this Order.   The deadline for notifying the Receiving Party of such designation is June 30, 2014, the close of discovery.

5.4     Inadvertent Production of Work Product or Privileged Information. Consistent with Federal Rule of Evidence 502, the inadvertent production of any information claimed to be subject to the attorney-client privilege, the work-product doctrine, or any other privilege is not a waiver of that privilege or protection, so long as the holder of the privilege takes reasonable steps to prevent disclosure and takes reasonable steps to rectify the error upon discovery or receiving notice of such error. Upon reasonably prompt written request of the Designating Party, the Receiving Party must, within a reasonable amount of time, return the information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the Receiving Party disclosed it before being notified; and may present the information to the Court under seal for a determination of the claim.   The deadline for making a written request for the return of information pursuant to this paragraph and Federal Rule of Evidence 502(d) is June 30, 2014, the close of discovery.

6.     **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1     Timing of Challenges. A Receiving Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge immediately after the original designation is disclosed. The Receiving Party must, however, offer a challenge to a Designating Party's confidentiality designation within a reasonable amount of time to avoid foreseeable substantial unfairness to the Designating Party or a later significant disruption or delay of the Action.

6.2     Meet and Confer. If a Receiving Party elects to challenge a Designating Party's confidentiality designation, the Receiving Party must do so in good

faith and begin the process by conferring with Outside Counsel for the Designating Party. In conferring, the Receiving Party must explain the basis for its belief that the Designating Party's confidentiality designation was not proper. A Designating Party has four (4) business days to review the Protected Material, reconsider its original designation, and explain its basis for its chosen designation or remove or change its designation as requested by the Receiving Party. A Receiving Party may only seek relief from the Court after completing this meet and confer process.

       6.3    <u>Judicial Intervention</u>. Challenges to Protected Material may be made in accordance with the procedures for resolution of discovery disputes of Judges Mix and Blackburn. Until the Court rules on the challenge, all Parties shall continue to afford the Protected Material in question the level of protection to which it is entitled under the Designating Party's designation.

       7.    **<u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>**

       7.1    <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party in connection with this Action only for prosecuting, defending, or attempting to settle this Action between the Parties. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures compliance with this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of Section 12, below.

       7.2    <u>Disclosure of "Confidential" Information or Items</u>. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "<u>Confidential</u>" only to:

       (a)    the named Plaintiff and Defendants in this Action;

       (b)    the Receiving Party's Outside Counsel in this Action;

(c)    up to two (2) officers, directors, or employees (including In-House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action, and who have executed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); if any Receiving Party believes that more than two (2) employees require access to Protected Material, the Receiving Party may negotiate that issue directly with the Designating Party;

(d)    Experts of the Receiving Party, who must execute an "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(e)    the Court and its support personnel, jurors, and court reporters in this Action between the Parties;

(f)    Professional Vendors to whom disclosure is reasonably necessary for this Action and who have executed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g)    any designated mediator who is assigned to hear this Action, or who has been selected by the Parties, and his or her staff, who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(h)    the author or recipient of the document, the original source of the information, or any person who has already seen the document or information (unless that person has only seen the document or information in violation of this Order or another court order); and

(i)    any person designated by mutual agreement of the Parties who has executed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), or by Order of the Court.

7.3    Disclosure of "Highly Confidential - Attorneys' Eyes Only" Information or Items. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "Highly Confidential - Attorneys' Eyes Only" only to:

(a)    the Receiving Party's Outside Counsel of record in this Action;

(b)    Experts of the Receiving Party, who must execute an "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)    the Court and its support personnel, jurors, and court reporters in this Action between the Parties;

(d)    Professional Vendors to whom disclosure is reasonably necessary for this Action and who have executed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(e)    any designated mediator who is assigned to hear this Action, or who has been selected by the Parties, and his or her staff, who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f)    the author or recipient of the document, the original source of the information, or any person who has already seen the document or information (unless that person has only seen the document or information in violation of this Order or another court order); and

(g)    any person designated by mutual agreement of the Parties who has executed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) or by Order of the Court.

7.4    <u>Acknowledgment and Agreement to Be Bound (Exhibit A)</u>.  The Acknowledgment and Agreement to Be Bound (Exhibit A) shall be retained by the Receiving Party's Outside Counsel and need not be shared.

7.5    <u>Use by Designating Party.</u> This Stipulation and Order has no effect upon, and shall not apply to, a Designating Party's use of its own Protected Material for any purpose.

7.6    <u>Use Limited to This Action</u>. Discovery Material, or information derived therefrom, shall be used solely for purposes of the Action and shall not be used

for any other purpose, including, without limitation, any business or commercial purpose, or any disclosure to or communications with, between or among any non-party or class member, including their attorneys or representatives, not actively involved in this Action.  Discovery Material, or information derived therefrom, may not be shared with, communicated to, or discussed with any plaintiff or any counsel for any plaintiff in the Securities Action.

8.    **EXPERT REPORTS**

The parties acknowledge that nothing in this Protective Order shall infringe on the confidentiality and privilege protections afforded by Federal Rule of Civil Procedure 26(b)(4)(B), which provides work-product protection for drafts of expert reports, regardless of whether the draft is written, electronic, or otherwise; and Federal Rule of Civil Procedure 26(b)(4)(C), which protects communications between an attorney and expert witness, except to the extent that such communications relate to (i) the expert's compensation for his testimony, (ii) facts or data that the attorney provided and that the expert considered in forming his opinions, and (iii) assumptions that the attorney provided and that the expert relied on in forming his opinions.

The parties further acknowledge that a party seeking disclosure of otherwise privileged expert draft reports and attorney-expert communication must show a substantial need for such disclosure and the inability to obtain the substantial equivalent without undue hardship pursuant to Federal Rule of Civil Procedure 26(b)(3)(A).  In the rare case in which a party makes this showing, Federal Rule of Civil Procedure 26(b)(3)(B) requires the court to protect against disclosure of counsel's mental impressions, conclusions, opinions, or legal theories of the case.

9.   **PROTECTED MATERIAL SUBPOENAED OR ORDERED**
     **PRODUCED IN OTHER ACTION**

If a Receiving Party is served with a subpoena or an order issued in another action that would compel disclosure of any information or items designated in this Action as "Confidential" or "Highly Confidential - Attorneys' Eyes Only," the Receiving Party must so notify the Designating Party in writing within 7 business days. Such notification must include a copy of the subpoena or court order.

Within 7 business days, the Receiving Party also must immediately inform in writing the non-party who caused the subpoena or order to issue that some or all the material covered by the subpoena or order is the subject of this Order. The Receiving Party must also send a copy of this writing to the Designating Party within the 7 business day time period. In addition, the Receiving Party must deliver a copy of this Order promptly to the non-party that caused the subpoena or order to issue.

The purpose of imposing these duties is to alert the interested parties to the existence of this Order and to afford the Designating Party in this Action an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued. The Designating Party shall bear the burdens and the expenses of seeking protection of its Protected Material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

10.   **UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating

Party of the unauthorized disclosures; (b) use its best efforts to retrieve all copies of the Protected Material; (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

11.   **FILING PROTECTED MATERIAL**

Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action any Protected Material. The procedures for seeking to file materials under seal will be as follows:

If the *Designating Party* is seeking to file material with the Court that *it* designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only," then it must file a Motion to Restrict Public Access in accordance with D.C.COLO.LCivR 7.2.

If a *Receiving Party* is seeking to file material that was marked "Confidential" or "Highly Confidential – Attorneys' Eyes Only" by the Designating Party, then D.C. COLO. L. Civ. R. 7.2 is modified as follows:

*Motion to Restrict Public Access.* In accordance with D.C. COLO. L. Civ. R. 7.2.B.1, the Receiving Party will file a Motion to Restrict Public Access in which it will identify the document or the proceeding for which the restriction is sought, *and the level of restriction sought under* In that *Local Rule 7.2.* motion, the Receiving Party will state that (1) the document(s) contain information that was designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" by the Designating Party; and (2) the Designating Party shall have five (5) business days in which to file a Response by Designating Party in Support of Motion to Restrict Public Access (see below). The document that is the subject of the Motion to Restrict Public Access will be filed by the Receiving Party as a restricted

document, and will be subject to restriction until the motion and the response (see below) are determined by the court.  The filing of the Motion to Restrict Public Access by the Receiving Party does not waive the rights of the Receiving Party to object to the Designating Party's designation of confidential material or the restriction of public access.

 *Response by Designating Party in Support of Motion to Restrict Public Access.* Within five (5) business days after the Motion to Restrict Public Access is filed by the Receiving Party, the *Designating Party* must file a Response by Designating Party in Support of the Motion to Restrict Public Access.  In that Response, the Designating Party must comply with D.C.COLO. L. Civ. R. 7.2.B.2 – 5. – *i.e.*, the Designating Party must (a) address the interest to be protected and why such interest outweighs the presumption of public access (stipulations between the parties or stipulated protective orders with regard to discovery, alone, are insufficient to justify restricted access); (b) identify a clearly defined and serious injury that would result if access is not restricted; (c) explain why no alternative to restricted access is practicable or why only restricted access will adequately protect the interest in question (e.g., redaction, summarization, restricted access to exhibits or portions of exhibits); and (d) identify the restriction level sought (i.e., Level 1 = access limited to the parties and the court; Level 2 = access limited to the filing party and the court; Level 3 = access limited to the court).  If a document is filed as a restricted document without an accompanying Response by Designating Party in Support of the Motion to Restrict Public Access, it will retain a Level 1 restriction for fourteen (14) days.  If no Response by Designating Party in Support of the Motion to Restrict Public access is filed within such time

period, the access restriction will expire and the document will be open to public inspection.

*Objection to the Response by Designating Party in Support of the Motion to Restrict Public Access.* Within five (5) business days after the Response by Designating Party in Support of the Motion to Restrict Access is filed, the Receiving Party and any other person may file an objection to the motion. ~~Absent exigent circumstances, no ruling on a motion to restrict access will be made until the time for~~ → *kla* ~~objection has passed.~~ The absence of objection shall ~~not,~~ alone, result in the granting of the motion.

12. **FINAL DISPOSITION**

Unless otherwise ordered or agreed in writing by the Designating Party, within ninety (90) court business days after the final termination of this Action (including any appeal), each Receiving Party must return to the Designating Party or use commercially reasonable efforts to destroy all of the Designating Party's Protected Material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material, but excludes any electronic archival copies made by the Receiving Party as part of a reasonable and routine retention or back-up practice provided that such archives are not accessible during the ordinary course of business. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Designating Party by the ninety (90) court business day deadline that certifies all Protected Material was returned or commercially reasonable efforts were used to destroy all Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all

pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Order as set forth in Section 4, above.

13.  **MISCELLANEOUS**

13.1  Binding Effect of Order. This Order shall be binding upon the Parties, and their attorneys, successors, executors, personal representatives, administrators, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

13.2  Reservation of Rights. Entering into, agreeing to and/or producing or receiving Protected Material or otherwise complying with the terms of this Stipulation and Order shall not:

a)  operate as an admission by any Party that any particular Protected Material contains or reflects trade secrets or any other type of confidential information;

b)  prejudice in any way the rights of the Parties to object to the production of documents they consider not subject to discovery, or operate as an admission by any Party that the restrictions and procedures set forth herein constitute adequate protection for any particular information designated by any Party as "Confidential" or "Highly Confidential - Attorneys' Eyes Only;"

c)  prejudice in any way the rights of any Party to object to the authenticity or admissibility into evidence of any document, testimony or other evidence subject to this Order;

d)  prejudice in any way the rights of a Party to seek a determination by the Court whether any Discovery Material or Protected Material should be subject to the terms of this Order;

       e)      prejudice in any way the rights of a Party to petition the Court for a further protective order relating to any purportedly confidential information;

       f)      shift the applicable burden of establishing confidentiality;

       g)      prevent the Parties to this Order from agreeing to alter or waive the provisions or protections provided for herein with respect to any particular Discovery Material; or

       h)      restrict Outside Counsel from advising its client with respect to this Action. In giving such advice, Outside Counsel may rely upon an examination of Protected Material. Unless otherwise authorized by this Order, Outside Counsel, however, shall not disclose the contents of any Protected Material to its client.

13.3   <u>Protocol for the Production of ESI and Hard Copy Documents</u>. The parties shall comply with the protocol for producing ESI and hard copy documents that is set forth in the attached Exhibit B.

STIPULATED, AGREED AND CONSENTED TO THIS

2nd DAY OF October, 2013

/s/
_____
Lynn Sarko
Havila Unrein
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384
Email: lsarko@kellerrohrback.com
hunrein@kellerrohrback.com

Ron Kilgard
Laurie Ashton
KELLER ROHRBACK P.L.C.
3101 North Central Avenue,
Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
Email: rkilgard@kellerrohrback.com
lashton@kellerrohrback.com

Karen L. Handorf
Monya Bunch
COHEN MILSTEIN SELLERS & TOLL,
PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
Email: khandorf@cohenmilstein.com
mbunch@cohenmilstein.com

*Counsel for Plaintiffs*

2nd DAY OF October, 2013

/s/
_____
Lars C. Golumbic
Lonie Hassel
Ada B. Esedebe
Emily C. Lechner
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, N.W.
Suite 1200
Washington, D.C. 20006
Tel: (202) 857-0620
Fax: (202) 659-4503
Email: lgolumbic@groom.com
lah@groom.com
aesedebe@groom.com
elechner@groom.com

*Counsel for Defendants*

SO ORDERED:

DATED: ___3rd___ day of ___October_____, 2013.

BY THE COURT:

UNITED STATES MAGISTRATE JUDGE

KRISTEN L. MIX
U.S. MAGISTRATE JUDGE
DISTRICT OF COLORADO

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

JANEEN MEDINA, individually, on behalf of all others similarly situated, and on behalf of the CHI Plans,

        Plaintiff,

        v.

CATHOLIC HEALTH INITIATIVES, a Colorado corporation,
PATRICIA G. WEBB,
CAROL KEENAN, and
JOHN and JANE DOES, 1-20,

        Defendants.

Civ. No. 1:13-cv-01249-REB-KLM

Hon. Robert E. Blackburn

## EXHIBIT A
## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I _____ , declare as follows:

    1.    My address is _____.

    2.    I am presently employed as _____ by _____ .

    3.    I have received a copy of the Stipulated Protective Order entered in the above Action on _____ (the "Protective Order"). I have carefully read and understand the provisions of the Protective Order, and agree to comply with and to be bound by all its terms.

    4.    I will hold in confidence, will not disclose in any manner any information or item (or portion thereof) that is subject to this Protective Order to any person or entity except in strict compliance with the provisions of the Protective Order, will use only for permitted purposes, and will not use for any business or competitive purpose apart from this Action, any "Confidential" or "Highly Confidential - Attorneys' Eyes

Only" document, testimony, information or physical object (or portion thereof) that is disclosed to me.

5.     I will return all "Confidential" or "Highly Confidential - Attorneys' Eyes Only" documents, testimony, information or physical objects (or portion thereof) that come into my possession, including documents or things that I prepare relating to this information, to Outside Counsel for the party by whom I am employed or retained or who has asked me to sign this agreement.

6.     I submit to the jurisdiction of this Court for the purposes of enforcement of the Protective Order in this Action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____ , ____ , at _____

_____

_____

Print Name and Sign

25

**EXHIBIT B**
**PROTOCOL FOR THE PRODUCTION OF ESI & HARD COPY DOCUMENTS**

**Electronically Stored Information Production Format**

The parties hereby stipulate to the form or forms in which electronically stored

information ("ESI") is to be produced.  The parties agree that all ESI is to be produced in

an "imaged" file with the corresponding "image load/unitization files," "OCR or Extracted

text files," and the "associated delimited metadata database." Additionally, the parties

agree that select files should be produced in their native file format where an image file

does not adequately represent the files as maintained in the ordinary course (often this

relates to spreadsheet files).  The key concepts are explained below.

1.    **Native:** Microsoft Access files, Excel files, .CSV files, media files, and

other similar databases and spreadsheet files shall be produced in the format which the

electronically stored information was originally created.  Native Files will be produced

together with a placeholder TIFF image.  Each TIFF placeholder will contain language

indicating that the document is being produced in native format.  A relative file path to

the native file shall be provided in the metadata database as described in item *5.* To the

extent any party obtains through discovery a file or document that it believes is not

adequately represented in an image file format, it may request that file or document be

produced in native format, the production of which may not unreasonably be withheld.

2.    **Imaged File:** a TIFF image converted from the native file as it was

originally created;

    a.    All images shall be group4 black and white TIFF files;

    b.    Hidden content, tracked changes or edits, comments, notes, and

other similar information viewable within the native file shall also be imaged so that such

26

content is viewable on the image;

      c.    Bates numbers shall be branded to the images so that the numbers print;

      d.    Images shall be single page TIFFs (one TIFF file for each page).

3.    **Image Load/Unitization Files:** An image load/unitization file in a standard .opt or .log litigation support image load format shall be included which provides:

      a.    the document number for each image;

      b.    the full path name(s) of each TIFF that represents an image;

      c.    the document boundaries for each document;

      d.    the load file shall be in the order that appropriately corresponds with each image file;

      e.    the following represents the format of a standard.opt or .log image load/unitization file:

Bates,Volume,PATH_to_image,Document Break,Folder Break,Box Break,Total_Pages.

```
M_0100000,06150101,\06150101\0000\000I.TIF,Y,,,1
M_0100001,06150101,\06150101\0000\0002.TIF,Y,,,I
M_0100002,06150101,\06150101\0000\0003.TIF,Y,,,1
M_0100003,06150101,\06150I01\0000\0004.TIF,Y,,,2
M_0100004,0615010I,\06150101\0000\0005.TIF,,,,
M_0100005,06150101,\06I50I01\0000\0006.TIF,Y,,,1
M_0100006,06150101,\06150101\0000\0007.TIF,Y,,,4
M_0100007,06150101,\06150101\0000\0008.TIF,,,,,
M_0100008,0615010I,\0615010I\0000\0009.TIF,,,,,
M_0100009,06150101,\06150101\0000\0010.TIF,,,,,
```

4.    **OCR or Extracted Text File:** An OCR or Extracted text file which corresponds to each imaged document shall be provided as follows:

      a.    Document level OCR text file for each imaged document located in the same directory as its image file;

b. The OCR file name shall be the same name of the first image page for the document set, followed by .txt.

5. **Associated delimited metadata database:** A database shall be provided in a ".dat" file format that extracts metadata into fields in a delimited text load file. For the Concordance .dat, the parties should use Concordance standard delimiters (ASCII 020 corresponding to a comma, ASCII 254 corresponding to a double quote, ASCII 174 corresponding to a new line, and a semicolon used to separate values). The fielded data should include all the below metadata fields for a file/document in addition to the unitization (including the production number of the first and last page of each document) and attachments (including information sufficient to identify the parent and child relationships of all documents that are or have attachments). The first line of the data load file should contain the field headers indicating the contents of each field, and each subsequent line should contain the fielded data for each document.

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| BEGBATES | Beginning production number for a given file/document | Email, E-Doc and Other[1] |
| ENDBATES | Ending production number for a given file/document | Email, E-Doc and Other |
| BEGATTACH | Production number of first page of parent | Email and E-Doc |
| ENDATTACH | Production number of last page of last attachment | Email and E-Doc |
| CUSTODIAN | Person, shared file or other source from whom files were collected | Email, E-Doc and Other |

[1] Other is defined as documents for which internal metadata is not exchanged, including but not limited to, scanned documents and documents obtained from the internet.

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| DUPLICATE CUSTODIAN | To identify other custodians whose files contained a particular document that was eliminated through de-duplication | Email and E-Doc |
| FILEEXT | File extension | Email and E-Doc |
| HASH | MD5 Hash Value | E-mail and E-Doc |
| HIDDEN CONTENT | Hidden content field extracted from a native file indicating whether hidden content exists within a file | E-mail and E-Doc |
| CONVERSATIONID | Conversation Index identifying email conversations. | E-mail |
| SUBJECT | Subject | E-mail |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Copyee | E-mail |
| BCC | Blind Copyee | E-mail |
| DATESENT | Date Sent & Time (MM/DD/YYYY HH:MM) | E-mail |
| TIMESENT | Time Sent (MM/DD/YYYY HH:MM) | E-mail |
| DATERECEIVED | Date Received & Time (MM/DD/YYYY HH:MM) | E-mail |
| AUTHOR | Author | E-Doc |
| DATELASTMOD | Date modified & Time (MM/DD/YYYY HH:MM) | E-Doc |
| FILENAME | Original file name | E-Doc |

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| NATIVEFILE | Path to native file as produced | Native |
| TEXTPATH | Path to OCR or extracted text file | E-mail, E-Doc and Other |

## HARD-COPY (I.E., NON-ESI) PRODUCTION FORMAT

This following applies to documents that exist only in hard-copy format and are therefore unavailable in native electronically stored information ("ESI") format (e.g., handwritten notes, including alterations to documents that are otherwise kept and producible as ESI in their unaltered form, or materials that were generated as ESI but where ESI files are inaccessible because they are not in the possession or control of Defendants).  All such documents that are amenable to being imaged should be produced in an "imaged" file with the corresponding "image load/unitization files," "OCR text files," and the "associated delimited database," as defined below.  Documents that exist only in hard copy should not he produced in hard copy format.

1.    **1. Imaged File:** a TIFF image scanned from the hard copy document;

     a.    All images shall be group4 black and white TIFF files;

     b.    Bates numbers shall be branded to the images so that the numbers print;

     c.    Images shall be single page TIFFs (one TIFF file for each page).

2.    **Image Load/Unitization Files:** An image load/unitization file in a standard .opt or .log litigation support image load format shall be included which provides:

     a.    the document number for each image;

     b.    the full path name(s) of each TIFF that represents an image;

     c.    the document boundaries for each document;

     d.    the load file shall be in the order that appropriately corresponds with each image file;

     e.    the following represents the format of a standard.opt or .log image

31

load/unitization file:

Bates,Volume,PATH_to_image,Document Break,Folder Break,Box Break,Total_Pages.

```
M_0100000,06150101,\06150101\0000\0001.TIF,Y,,,I
M_0100001,06150101,\06150101\0000\0002.TIF,Y,,,I
M_0100002,06150101,\06150101\0000\0003.TIF,Y,,,1
M_0100003,06150101,\06150101\0000\0004.TIF,Y,,,2
M_0100004,06150101,\06150101\0000\0005.TIF,,,,
M_0100005,06150101,\06150101\0000\0006.TIF,Y,,,I
M_0100006,06150101,\06150101\0000\0007.TTF,Y,,,4
M_0100007,06150101,\06150101\0000\0008.TIF,,,,,
M_0100008,06150101,\0615010I\0000\0009.TIF,,,,,
M_0100009,06150101,\06150101\0000\0010.TIF,,,,,
```

      3.    **OCR/Extracted Text File**:  An OCR or extracted text file which

corresponds to each imaged document shall be provided as follows:

      a.    Document level OCR text file for each imaged document located in

the same directory as the image file;

      b.    The OCR file name shall be the same name of the first image page

for the document set, followed by .txt.

      4.    **Associated delimited database:** A database shall be provided in a ".dat"

file format that extracts metadata into fields in a delimited text load file.  For the

Concordance .dat, the parties should use Concordance standard delimiters (ASCII 020

corresponding to a comma, ASCII 254 corresponding to a double quote, ASCII 174

corresponding to a new line, and a semicolon used to separate values).  The fielded

data should include all the below metadata fields for a file/document in addition to the

unitization (including the production number of the first and last page of each document)

and attachments (including information sufficient to identify the parent and child

relationships of all documents that are or have attachments as captured by any hard

copy binding).  The first line of the data load file should contain the field headers

indicating the contents of each field, and each subsequent line should contain the fielded data for each document.  Load files shall include the below metadata fields, or substantially identical metadata fields, to the extent already in existence and reasonably accessible.

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| BEGBATES | Beginning production number for a given document |
| ENDBATES | Ending production number for a given document |
| CUSTODIAN | Person, shared file or other source from whom files were collected |
| TEXTPATH | Path to OCR or extracted text file |