IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01249-REB-KLM

JANEEN MEDINA,

      Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES, a Colorado Corporation,
GERALDINE BEDNASH,
MAUREEN COMER,
RICHARD CORRENTE,
DAVID R. EDWARDS,
KATHERINE GRAY,
BARBARA HAGEDORN,
JAMES HAMILL,
ANTOINETTE HARDY-WALLER,
PHYLLIS HUGHES,
DONALD JONES,
ANDREA J. LEE,
DAVID R. LINCOLN,
KEVIN E. LOFTON,
CHRISTOPHER R. LOWNEY,
ELEANOR F. MARTIN,
MARY MARGARET MOONEY,
LILLIAN MURPHY,
MARY JO POTTER,
PATRICIA SMITH,
EDWARD SPEED,
DEAN SWINDLE,
PATRICIA G. WEBB, and
JOHN AND JANE DOES, 1-10, whose true names are unknown,

      Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on **Plaintiff's Motion for Partial Summary**

1

Judgment [#140][1] (the "Motion").  Defendants filed a Response [#154] to the Motion and

Plaintiff filed a Reply [#164] in further support of the Motion.  Pursuant to 28 U.S.C. §

636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion has been referred to this Court for a

recommendation regarding disposition [#141].  The Court has reviewed the Motion, the

Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised

in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS**

that the Motion [#140] be **GRANTED in part** and **DENIED in part**.

## I.  Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action

arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which

provides that "the district courts of the United States shall have exclusive jurisdiction of civil

actions under this subchapter brought by . . . a participant[ or] beneficiary . . . ."

## II.  Summary of the Case

### A.    Procedural Background

Plaintiff[2] initiated this lawsuit on May 10, 2013.  *See generally Complaint* [#1].  On

October 7, 2013, Defendants[3] filed an Answer [#73].  On November 22, 2013, Plaintiff filed

the Amended Complaint [#82], in which she asserts eight claims: (1) a claim for equitable

---

[1]  "[#33]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Recommendation.

[2]  At the time this case was initiated, there were multiple plaintiffs.  At this time, the only remaining Plaintiff is Janeen Medina.

[3]  At the time the Answer was filed the Defendants were: Catholic Health Initiatives, Patricia G. Webb, Carol Keenan, and John and Jane Does 1-20.

relief pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") §

502(a)(3) against Defendant Catholic Health Initiatives ("CHI"), *Am. Comp.* ¶¶ 130-33; (2)

a claim for violations of ERISA's reporting and disclosure provisions against all

Defendants[4], *id.* ¶¶ 134-48; (3) a claim pursuant to 29 U.S.C. § 1082, ERISA's provision

relating to minimum funding, against Defendant CHI, *id.* ¶¶ 149-53; (4) a claim pursuant to

29 U.S.C. § 1102 (ERISA § 402), for failure to promulgate written instruments in

accordance with the requirements of this provision, against Defendant CHI, *id.* ¶¶ 150-57;

(5) a claim pursuant to 29 U.S.C. § 1103 (ERISA § 403), for failure to establish a trust as

required by the statute, against Defendant CHI, *id.* ¶¶ 158-61; (6) a claim pursuant to 29

U.S.C. § 1132(a)(1)(A) (ERISA § 502(a)(1)(A)), for monetary penalties against all

Defendants, *id.* ¶¶ 162-68; (7) a claim for breach of fiduciary duty against all Defendants,

*id.* ¶¶ 169-84; and (8) a claim for declaratory relief that ERISA's church plan exemption

violates the establishment clause of the First Amendment against Defendant CHI, *id.* ¶¶

185-88. Ultimately, Plaintiff seeks the following relief: (1) a declaratory judgment that the

retirement plan at issue, the Catholic Health Initiatives Retirement Plan, Amended and

Restated Effective January 1, 2008 (the "CHI Plan")[5], is an employee benefit plan pursuant

---

[4] The Amended Complaint brings claims against many additional individual Defendants who are alleged to be members of Defendant CHI's Board of Stewardship Trustees, the Human Resources Committee of the Board of Stewardship Trustees, or the CHI & Affiliates Defined Benefit Plan Subcommittee. *Am. Compl.* [#82] ¶¶ 19-22.

[5] The Amended Complaint refers to the "CHI Plans" but the only specific benefit plan identified by Plaintiff is the Catholic Health Initiatives Retirement Plan, Amended and Restated Effective January 1, 2008. *See, e.g., Am. Compl.* [#82] ¶¶ 3-4, 9-10, 57-59 (noting that Plaintiff seeks through discovery information to enable her to identify other benefit plans that "fit the definition herein of 'CHI Plans'"). Accordingly, the Court treats Plaintiff's requests for relief in the Motion as being limited to the Catholic Health Initiatives Retirement Plan, Amended and Restated Effective January 1, 2008.

to 29 U.S.C. § 1002(2) (ERISA § 3(2)), is a defined benefit plan pursuant to 29 U.S.C. § 1002(35) (ERISA § 3(35)), and is not a church plan pursuant to 29 U.S.C. § 1002(33) (ERISA § 3(33)) ("Count I").  As a result, Plaintiff (2) asks the Court to order Defendants to reform the CHI Plans to comply with ERISA in a variety of ways; (3) seeks a declaratory judgment that the church plan exemption to ERISA is an unconstitutional accommodation under the establishment clause of the First Amendment; (4) seeks attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g) (ERISA § 502(g)); (5) seeks taxable costs pursuant to 29 U.S.C. § 1132(g) (ERISA § 502(g)) and 28 U.S.C. § 1920; (6) seeks pre-judgment interest; and (7) asks the Court to enter an order "[a]warding, declaring or otherwise providing Plaintiff[ ] and the Class[6] all relief under ERISA section 502(a), 29 U.S.C. § 1132(a), or any other applicable law . . . ." *Id.* at 63-66.    In response to the Amended Complaint, Defendants filed their Motion to Dismiss Plaintiffs' Amended Complaint with Memorandum in Support [#123] (the "Motion to Dismiss"), which is pending before the Court.

On January 28, 2014, Plaintiff filed the instant Motion [#140].  On June 24, 2014, the Court heard oral argument regarding the Motion and the Motion to Dismiss.  *See generally Courtroom Minutes/Minute Order* [#194]; *Transcript* [#196].

**B.    The Motion**

In the Motion, Plaintiff requests summary judgment on Count I, which is brought pursuant to ERISA § 502(a)(3) and seeks a declaration that the CHI Plan is not a church plan within the meaning of ERISA § 3(33), 29 U.S.C. § 1132(a)(3). *Motion* [#140] at 1; *Am.*

---

[6]  Plaintiffs' Amended Motion for Class Certification [#121] is pending before the Court.

*Compl.* [#82] ¶¶ 130-133.  In short, Plaintiff's argument is:

> ERISA, as adopted in 1974, defined a "church plan" as one "*established* and maintained . . . for its employees . . . by a *church* or by a convention or association of churches." 29 U.S.C. § 1002(33)(A) (emphasis added).  In 1980, the statute was amended to provide that: (1) a church plan could be "*maintained*" by an organization whose "principal purpose or function . . . is the administration or funding of a plan . . . if such organization is controlled by or associated with a church" ("administrative church organization"), *see id.* § 1002(33)(C)(i); and (2) employees of an organization "controlled by or associated with a church" could be *included* in that church's plan, *see id.* § 1002(33)(C)(ii).   However, neither amendment altered the requirement in section A that a church plan must be *established* by a church, and this remains the law today. *Id.* § 1002(33)(A). *See also Rollins v. Dignity Health* ("Dignity"), --- F. Supp. 2d ---, No. 13-1450, 2013 WL 6512682, at *7 (N.D. Cal. Dec. 12, 2013) ("both the [statutory] text and the [legislative] history confirm that a church plan must still be established by a church."). Because it is undisputed that CHI established the CHI Plan and that CHI is not a church, Plaintiff is entitled to judgment as a matter of law that the CHI Plan is not exempt from ERISA as a "church plan." *See* AC (Count I).

*Motion* [#140] at 2 (emphasis in original).  Plaintiff offers the following undisputed material facts in support of the Motion.

- Plaintiff is a participant in the CHI Plan;

- The CHI Plan is a defined benefit pension plan;

- Defendant CHI established the CHI Plan; and

- Defendant CHI is not a church.[7]

*Id.* at 3-4.  Defendant does not directly address or contest these facts in its Response.

While a church plan may be maintained by an administrative church organization pursuant to 29 U.S.C. § 1002(33)(C)(i) and employees of a church-associated organization may participate in a church plan pursuant to 29 U.S.C. § 1002(33)(C)(ii), Plaintiff argues

---

[7] Below the Court addresses Defendants' last minute contention of this fact at the oral argument.

that neither of these provisions alter the basic requirement that to qualify as a "church plan," the plan must be established by a church. *Id.* at 5-12. Plaintiff also distinguishes case law and informal agency rulings that, according to Plaintiff, "erroneously extended the church plan exemption to plans established by church-associated organizations . . . ." *Id.* at 12-14. Plaintiff further argues that "the canon of constitutional avoidance further compels the statutory construction requiring [that] church plans be established by churches." *Id.* at 14. She maintains that "[i]f the statute here were interpreted to allow a non-church conglomerate like [Defendant] CHI to unilaterally establish a church plan based on its professed religious affiliation, the church plan exemption would be an unconstitutional religious accommodation." *Id.* at 15. Finally, Plaintiff argues that, as a plan participant, she is authorized to seek the requested relief. *Id.* at 16-17.

In their Response, Defendants argue that Plaintiff misreads ERISA. *Response* [#154] at 3-7. Defendants maintain that ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A), makes clear that

> a plan is a church plan if (1) the plan was "established and maintained . . . for its employees (or their beneficiaries) by a church or by a convention or association of churches"; and (2) that church or convention or association of churches is exempt from tax under section 501 of title 26.

*Id.* at 4. Defendants aver that ERISA § 3(33)(C)(i) "clarifies section 3(33)(A) by identifying one particular type of plan that will be held to satisfy the definition of 'established and maintained . . . by a church' in requirement (1)." *Id.* Accordingly, Defendants read the sections of the statute, taken together, to mean:

> The term "church plan" . . . includes a plan [1] maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, [2] for the employees of a

6

church or a convention or association of churches, [3] if such organization is controlled by or associated with a church or a convention or association of churches [4] which is exempt from tax under section 501 of title 26.

*Id.* at 4-5.  Defendants take the position that plans that do not meet the above requirements may still qualify as church plans if they are established by a church, but that being established by a church is not a requirement of every church plan.  *Id.* at 5.  Turning to the case law, Defendants argue that *Rollins v. Dignity Health*, No. 13-1450, 2013 WL 6512682 (N.D. Cal. Dec. 12, 2013), is an outlier because it is the first case to disagree with other courts which have held that a plan established by a church-associated organization can be a church plan.  *Id.* at 6-7.  Defendants also point to legislative history to support their position.  *Id.* at 8-10.  Defendants maintain that federal agencies interpreting the statute have recognized that a church plan can be a plan maintained by an organization like Defendant CHI.  *Id.* at 10-12.  Defendants also present evidence that the Internal Revenue Service ("IRS") was asked to determine whether the CHI Plan is a church plan and found that it is.  *Id.* at 12-13.  With regard to agency determinations, Defendants state that while the Court is not required to defer to such interpretations, it should defer to the interpretations of the agencies, as courts other than the *Rollins* court have in the past.  *Id.* at 14-15.  Defendants further argue that the canon of constitutional avoidance is not a factor here because there is no ambiguity in the statute.  *Id.* at 15.  Defendants aver that even if ERISA is ambiguous, the canon is designed to give effect to legislative intent and, here, the intent of Congress was to avoid the entanglement of the government in the affairs of a church.  *Id.*  Defendants also argue that "Plaintiff has not presented any serious constitutional issue that must be avoided."  *Id.* at 16.  Finally, Defendants argue that the relief requested is inappropriate.  *Id.* at 18-20.  Defendants maintain that a declaration that

the CHI Plan is not a church plan would subvert ERISA §3(33)(D)(i), which allows a plan that fails to meet the requirements of a church plan a "correction period" set by a court or determined by the Secretary of the Treasury.  *Id.* at 19.  Therefore, Defendants argue that the CHI Plan "must be given the opportunity to correct its failure to meet the requirements of the church plan definition."  *Id.*

Plaintiff's Reply generally revisits the arguments presented in the Motion.  First, Plaintiff argues that Defendants' reading of the definition of "church plan" is incorrect and that such a reading effectively eliminates the statute's text, which defines a church plan as being "established and maintained" by a church.  *Reply* [#164] at 2.  Plaintiff further argues that the case law Defendants rely on is flawed and that the *Rollins* decision is the only decision that engaged in detailed statutory interpretation regarding the various provisions of ERISA.  *Id.* at 3.  Further, Plaintiff maintains that the appellate court decisions cited by Defendants do not address whether a non-church entity can establish a church plan.  *Id.* Plaintiff maintains that the agency interpretations of ERISA relied on by Defendants are unpersuasive.  *Id.* at 4.  Plaintiff argues that agency letters that do not analyze a statute closely are not entitled to deference and that the IRS letter regarding the CHI Plan falls within this category.  *Id.* at 5.  In addition, Plaintiff attacks the agency interpretations because they are informal.  *Id.*  Regarding the legislative history, Plaintiff argues that "no one ever suggested that the church agencies could establish their own stand-alone church plans" and that the legislative history does not support such an interpretation.  *Id.* at 6-7. Plaintiff revisits her argument regarding the canon of constitutional avoidance, stating: "The text of the statute is clear.  However, even if it were ambiguous, the canon of constitutional avoidance weighs in favor of Plaintiff's interpretation."  *Id.* at 7.  Finally, regarding Plaintiff's

8

right to the declaratory relief requested, Plaintiff argues that ERISA § 3(33)(D) provides that a plan "established and maintained" by a church that fails to meet statutory requirements is entitled to a "correction period," but that the CHI Plan is not such a plan. *Id.* at 10.

### III.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a *prima facie* showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321,

1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

## IV. Analysis

### A.   ERISA

ERISA "is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans" by subjecting "both pension plans and welfare plans" to federal regulation.  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). "[W]hen Congress enacted ERISA it 'wanted to . . . mak[e] sure that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it.'"  *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375 (1980)) (modifications in original).  To effectuate this goal, "[t]he statute imposes participation, funding, and vesting requirements on pension plans . . . .  [and] sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans."  *Shaw*, 463

U.S. at 90-91.

ERISA applies to "any employer benefit plan if it is established or maintained (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or (3) by both."  29 U.S.C. § 1003(a).  However, certain employee benefit plans are exempted from ERISA.  29 U.S.C. § 1003(b).  Pursuant to 29 U.S.C. § 1003(b)(2), ERISA does not apply to an employee benefit plan that is a "church plan."  ERISA defines a church plan to be:

> a plan established and maintained (to the extent required in clause (ii) of subparagraph (B)) for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of title 26.

29 U.S.C. § 1002(33)(A).  The statute further clarifies that

> [t]he term "church plan" does not include a plan—
>
> (i) which is established and maintained primarily for the benefit of employees (or their beneficiaries) of such church or convention or association of churches who are employed in connection with one or more unrelated trades or businesses (within the meaning of section 513 of Title 26), or
>
> (ii) if less than substantially all of the individuals included in the plan are individuals described in subparagraph (A) or in clause (i) of subparagraph (C) (or their beneficiaries).

29 U.S.C. § 1002(33)(B).  Finally, ERISA makes clear that

> [f]or purposes of this paragraph—
>
> (i) A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or

a convention or association of churches.

(ii) The term employee of a church or a convention or association of churches includes—

(I) a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry, regardless of the source of his compensation; [and]

(II) an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 of Title 26 and which is controlled by or associated with a church or a convention or association of churches; . . . .

29 U.S.C. § 1002(33)(C). Finally, ERISA includes a correction period if such a church plan

fails to meet one or more of the requirements of 29 U.S.C. § 1002(33):

If a plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26 fails to meet one or more of the requirements of this paragraph and corrects its failure to meet such requirements within the correction period, the plan shall be deemed to meet the requirements of this paragraph for the year in which the correction was made and for all prior years.

29 U.S.C. § 1002(33)(D)(i). As noted by the court in *Kaplan v. Saint Peter's Healthcare*

*System*, 2014 WL 1284854, "[c]hurch plans were exempted from ERISA because the

examination of a church's books by the government might be regarded as 'an unjustified

invasion of the confidential relationship that is believed to be appropriate with regard to

churches and their religious activities.'" *Id.* at *1 (D.N.J. March 31, 2014) (quoting Report

of Senate Fin. Comm., No. 93-383 (Aug. 21, 1973)).

**B.    CHI and the Plan**

The parties included a list of undisputed facts[8] in the Amended Joint Scheduling

---

[8] The parties also included a disclaimer that "no Party necessarily agrees that any particular fact listed below is material to the claims and defenses in the case." *Am. Jt. Sched. Order* [#67] §

Order [#67] entered in this case.  The following information is taken from those undisputed facts.

Defendant CHI "is a non-profit corporation established under, and governed by, the laws of the state of Colorado, including the Colorado Nonprofit Corporation Act." *Am. Jt. Sched. Order* [#67] § 4(2).  "CHI is not a church or a convention or association of churches." *Id.*  As of June 30, 2012, Defendant CHI had approximately 86,000 employees, operated in 18 states, and had operating revenue of approximately $9.8 billion. *Id.* § 4(7)-(9).  Defendant CHI sponsors the CHI Plan, which, as of May 10, 2013 had more than 70,000 participants and beneficiaries. *Id.* §§ 4(4), 4(6).   One of those participants is Plaintiff. *Id.* § 4(5).  In 2002, the IRS issued a Private Letter Ruling with respect to the CHI Plan. *Id.* § 4(11); *see generally Response, Ex. C* [#154-4] (the "IRS Letter").  The IRS Letter concludes that the CHI Plan is a church plan under § 414(e) of the Internal Revenue Code. *IRS Letter* [#154-4] at 4, 7.

**C.    Plaintiff's Status**

According to the Amended Complaint, Plaintiff was an employee of Defendant CHI from October 16, 1986 until November 17, 2003. *Am. Compl.* [#82] ¶ 15.  Plaintiff alleges that she "became a participant in the [CHI Plan] in 1997 and continues to be a participant because she is or will become eligible for pension benefits under the [CHI] Plan" upon

---

4.  For purposes of deciding the Motion, the disclaimer is irrelevant because the Court determines which facts are material based on the substantive law.  *Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."); *Ellis v. J.R.'s Country Stores, Inc.*, No. 12-cv-01916-CMA-KLM, 2013 WL 3661665, at *2 (D. Colo. July 12, 2013) ("A fact is 'material' if it is essential to proper disposition of the claim under the relevant substantive law.") (citing *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-21 (10th Cir. 2001)).

reaching retirement age. *Id.* In the alternative, Plaintiff maintains that she is a participant in the CHI Plan pursuant to 29 U.S.C. § 1002(7) (ERISA § 3(7)), and is therefore entitled to bring this action pursuant to 29 U.S.C. §§ 1132(a)(1)(A)-(a)(3), 1132(c)(1), and 1132(c)(3). *Id.* As noted above, the Amended Joint Scheduling Order's undisputed facts section also states that Plaintiff "is a participant in the CHI Plan." *Am. Jt. Sched. Order* [#67] § 4(5).

**D.     The CHI Plan is Not a Church Plan**

Three recent court decisions address ERISA's church plan exemption. Two of the cases closely examine the language of the statute and determine that a church plan must be established by a church. *Rollins*, 2013 WL 6512682, at *5 ("The Court holds that notwithstanding section C, which permits a valid church plan to be maintained by some church-affiliated organization, section A still requires that a church *establish* a church plan.") (emphasis in original); *Kaplan*, 2014 WL 1284854, at *5 ("The key to this interpretation is to recognize that subsection A is the gatekeeper to the church plan exemption: although the church plan definition, as defined in subsection A, is expanded by subsection C to include plans ***maintained*** by a tax-exempt organization, it nevertheless requires that the plan be ***established*** by a church or a convention or association of churches. In other words, if a church does not establish the plan, the inquiry ends there.") (emphasis in original); *contra Overall v. Ascension*, --- F.Supp.2d ---, 2014 WL 2448492, at *15 (E.D. Mich. 2014) ("A church plan is a plan that is (1) established by a church or (2) established by an organization that is controlled by or associated with a church."). This Court's analysis of the statute reaches the same conclusion as the *Rollins* and *Kaplan*

14

courts.

In order to determine whether the CHI Plan is a church plan pursuant to ERISA, the Court begins "with the language of the statute." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002). "The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). To do this, the Court considers "the specific context in which the language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341. "This is 'a holistic endeavor,' taking into account, at a minimum, the 'statute's full text, language as well as punctuation, structure, and subject matter.'" *Carpio v. Holder*, 592 F.3d 1091, 1098 (10th Cir. 2010) (quoting *United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 455 (1993)). Ultimately, it is the Court's "charge to give effect to the law Congress enacted." *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 217 (2010). The Court "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted). This is the "cardinal canon" of statutory construction that the Court must consider "before all others." *Id.* at 253. "The inquiry ceases 'if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Barnhart*, 534 U.S. at 450 (quoting *Robinson*, 519 U.S. at 340); *Conn. Nat'l Bank*, 503 U.S. at 254 ("When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (internal quotation marks and citations omitted). "If, on the other hand, the text is ambiguous—i.e., 'capable of being understood by reasonably well-informed persons in two or more different senses'—we must inquire further to discern Congress's intent." *In re*

*Stephens*, 704 F.3d 1279, 1283 (10th Cir. 2013).

Here, the statute begins by stating that a "church plan" is "a plan established and maintained . . . by a church or by a convention or association of churches which is exempt from tax under section 501 of title 26." 29 U.S.C. § 1002(33)(A). There is nothing unambiguous about this portion of the statute. It requires that a "church plan" be *established and maintained* by a church or a convention or association of churches. The word "and" connotes that both requirements must be met, not that a plan may be *either* established *or* maintained by a church. *See Diamond v. Diehr*, 450 U.S. 175, 182 (1981) ("Unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.") (internal quotation marks and citation omitted). Section C amends section A to expand the term "church plan" pursuant to ERISA. It states that a "church plan" as described in section A "includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches." 29 U.S.C. § 1002(33)(C)(i). This expansion of the definition of church plan does not create an inconsistency within the statute, nor is section C(i) ambiguous.

As the *Rollins* court noted,

> While the amended section C(i) does permit church plans to *include* plans maintained by some church-associated organizations, for such a specific exception to govern what a church plan *is*, would completely vitiate the original rule embodied in section A, defining a church plan as a plan established and maintained by a church.

16

*Rollins*, 2013 WL 6512682, at *5 (emphasis in original).  The Court agrees.  If Defendants'

argument that the CHI Plan is a church plan because it is *maintained* by a court-associated

organization is correct, section A's requirement that a church plan be *established* by a

church or a church-affiliated organization would be rendered meaningless.   Such an

interpretation of the statute is contrary to the unambiguous meaning of section A and

renders sections A and C of the statute inconsistent with each other.   *Cf. Robinson*, 519

U.S. at 341 ("Our inquiry must cease if the statutory language is unambiguous and the

statutory scheme is coherent and consistent.") (internal quotation marks omitted) (citations

omitted); *CIR v. Clark*, 489 U.S. 726, 739 (1989) ("In construing provisions . . . in which a

general statement . . . is qualified by an exception, we usually read the exception narrowly

in order to preserve the primary operation of the provision."); *Philips, Inc. v. Walling*, 324

U.S. 490, 493 (1945) ("To extend an exemption to other than those plainly and

unmistakably within its terms and spirit is to abuse the interpretative process and to

frustrate the announced will of the people.").  As the *Kaplan* court noted, a straight-forward

reading of the plain, unambiguous language of the statute reveals that

> Congress has explicitly provided two ways to fall within the church plan
> exemption: (1) a plan established and maintained by a church, or (2) a plan
> established by a church and maintained by a tax-exempt organization, the
> principal purpose or function of which is the administration or funding of the
> plan, that is either controlled by or associated with a church.  Once a church
> plan is established in one of these ways, subsection C(i) delineates what
> individuals may participate in the church plan as employees of the church.
>
> . . .
>
> In other words, if a church does not establish the plan, the inquiry ends there.
> If, on the other hand, a church establishes the plan, the remaining sections
> of the church plan definition are triggered.

*Kaplan*, 2014 WL 1284854, at *5; *contra Overall*, 2014 WL 2448492, at *15 ("A church plan

17

is a plan that is (1) established by a church or (2) established by an organization that is controlled by or associated with a church."); *Thorkelson v. Publishing House of Evangelical Lutheran Church in Am.*, 764 F.Supp.2d 1119, 1126-27 (D. Minn. 2011) (holding that "employer benefit plan, established and maintained by an organization controlled by or associated with a church," is a church plan under ERISA); *Ward v. Unum Life Ins. Co. of Am.*, 2010 WL 4337821, at *2 (E.D. Wis. Oct. 25, 2010) (holding that benefit plan was a church plan under ERISA).  Further, the language of section C mirrors the language of section A in the first portion of the sentence: "A plan *established and maintained* . . . by a church" and then makes clear that this "includes a plan *maintained* by an organization . . . ." 29 U.S.C. § 1002(33)(C)(i) (emphasis added).  When Congress drafted section C it was undoubtedly aware of the language "established and maintained" used in section A. Nevertheless, Congress did not include the phrase "*established and* maintained" when clarifying that a church plan "includes a plan maintained by a[ church-affiliated] organization."  This leads the Court to conclude that the plain meaning of the statute requires that a "church plan" be both established by a church or a convention or association of churches and, at the very least, maintained by a church-affiliated organization.  Because the Court finds that the language of the statute is unambiguous, it is not appropriate to consider the legislative history.  *Barnhart*, 534 U.S. at 450.

Throughout this case, Defendants have conceded that Defendant CHI is not a church.  *Am. Jt. Sched. Order* [#67] § 4(2) ( "CHI is not a church or a convention or association of churches."); *Answer* [#73] ¶ 49.  In fact, Plaintiff's Motion delineates only four undisputed material facts, *Motion* [#140] at 3-4, one of which is that Defendant CHI is not a church.  Defendants have not challenged that fact in their Response.  *See generally*

18

*Response* [#154].  It was not until the June 24, 2014 oral argument that Defendants' counsel argued that it is *possible* Defendant CHI is a church.  *Transcript* [#196] at 52:9-53:23.  However, during that argument, Defendants conceded that the principle purpose of Defendant CHI is to provide health care.  *Id.* at 46:14-20.  In addition, when pressed by the Court, defense counsel also admitted that Defendants' concession in its Answer to the original Complaint that Defendant CHI is not a church was "an admission of fact."  *Id.* at 54:4-5.  The Court cannot accept counsel's unsubstantiated statements during oral argument that Defendant CHI may be a "church" for purposes of ERISA in the face of Defendants' previous clear and repeated admission that Defendant CHI *is not* a church.  *Am. Jt. Sched. Order* [#67] § 4(2) ("CHI is not a church or a convention or association of churches."); *Answer* [#73] ¶ 49.  As explained below, Defendants' admissions regarding this fact constitute a judicial admission.

"Judicial admissions are formal admissions . . . which have the effect of withdrawing a fact from issue and dispensing with the need for proof of the fact."  *Guidry v. Sheet Metal Workers Int'l Ass'n*, 10 F.3d 700, 716 (10th Cir. 1993) (internal quotation marks omitted).  "'[A]dmissions in the pleadings . . . are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended.'"  *Grynberg v. Bar S Servs., Inc.*, 527 F.App'x 736, 739 (10th Cir. June 11, 2013) (quoting *Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990)).  Judicial admissions may also be made through stipulation of the parties.  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *Ferguson v. Neighborhood Housing Servs. of Cleveland, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986).  The Seventh Circuit has explained judicial admissions in these terms:

Judicial admissions are formal concessions in the pleadings, or stipulations

> by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are 'not evidence at all but rather have the effect of withdrawing a fact from contention.' Michael H. Graham, *Federal Practice and Procedure: Evidence* § 6726 (Interim edition); *see also* John William Strong, *McCormick on Evidence* § 254, at 142 (1992). A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party. *Id.* When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission. Michael H. Graham, *Federal Practice and Procedure* § 6726, at 536-37.

*Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995). Here, Defendants admitted Defendant CHI was not a church in their Answer to the original Complaint and stipulated to that fact in the Amended Joint Scheduling Order. *Answer* [#73] ¶ 49; *Am. Jt. Sched. Order* [#67] § 4(2) ("CHI is not a church or a convention or association of churches."). A party's "attempt to disavow [an] earlier judicial admission[ ] . . . with seemingly contradictory evidence at summary judgment does not create a disputed issue of fact." *Grynberg*, 527 at 739 (citations omitted). Here, Defendants did not offer contradictory *evidence* during oral argument. Instead, counsel merely postulated that it is possible Defendant CHI may be a church. Thus, the Court finds that there is no factual dispute regarding the fact that Defendant CHI is not a church.

As discussed above, in order to qualify as a church plan under ERISA, a benefit plan must be established by a church or a convention or association of churches. Here, the CHI Plan was established by Defendant CHI. *Motion, Ex. 1* [#140-1] at 3 (excerpt from CHI Plan stating "Catholic Health Initiatives hereby establishes a cash balance pension plan to be known as the Catholic Health Initiatives Retirement Plan . . . ."). In light of Defendants' judicial admission that Defendant CHI is not a church, the CHI Plan is not a church plan

under ERISA because it was not established by a church or a convention or association or churches.

**E.     The IRS Letter**

As noted above, in 2002, the IRS issued a Private Letter Ruling with respect to the CHI Plan. *Id.* § 4(11); *see generally IRS Letter* [#154-4]. The IRS Letter concludes that the CHI Plan is a church plan under § 414(e) of the Internal Revenue Code, 26 U.S.C. § 414(e). *IRS Letter* [#154-4] at 4, 7. The language of section 414(e) mimics that of ERISA, stating:

> For purposes of this part, the term "church plan" means a plan established and maintained . . . by a church or by a convention or association of churches which is exempt from tax under section 501.

26 U.S.C. § 414(e)(1). The IRS Letter is based on various facts and representations that were submitted to the IRS. *IRS Letter* [#154-4] at 4-5. In addition, it states that the IRS Letter "may not be used or cited by others as precedent." *Id.* at 8.

Defendants argue that, while the Court is not required to defer to agency interpretations, it should defer to the IRS's determination as expressed in the IRS Letter. *Response* [#154] at 12-15. However, the Court should not defer to an agency interpretation when the intent of Congress is clear from the language of the statute. *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 843 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). That is the case here. The unambiguous language of 29 U.S.C. § 1002(33) is clear that a church plan must be established by a church and Defendants admit that Defendant CHI is not a church. Accordingly, the CHI Plan is not a church plan pursuant to ERISA. *See* Section III.D.,

*supra*. Therefore, the Court need not consider any agency construction of the statute.[9]  In

addition, even if the statute is ambiguous, which it is not, and the Court considered

legislative history in order to discern the meaning of the statute, which it does not, the Court

would nevertheless have to reject an administrative construction of the statute found to be

contrary to the clear congressional intent.  *Id.* at 843 n.9 ("The judiciary is the final authority

on issues of statutory construction and must reject administrative constructions which are

contrary to clear congressional intent.") (citations omitted).  In addition, as the IRS Letter

clearly states, it cannot be relied upon as precedent.  *IRS Letter* [#154-4] at 8; *see also* 29

U.S.C. § 6110(k)(3) ("Unless the Secretary otherwise establishes by regulations, a written

determination may not be used or cited as precedent."); *Christensen v. Harris Cnty.*, 529

U.S. 576, 587 (2000) (noting that opinion letters do not result from formal adjudication or

notice-and-comment rulemaking and thus are not entitled to the sort of deference required

by *Chevron*).

## G.    The Requested Relief

In the Motion, Plaintiff requests summary judgment on Count I, which is brought

pursuant to ERISA § 502(a)(3) and seeks a declaratory judgment that the CHI Plan is not

a church plan within the meaning of ERISA.  *Motion* [#140] at 1; *Am. Compl.* [#82] ¶¶ 130-

133.  The Motion also requests that the Court enter a broad order requiring Defendants to

---

[9]  Notably, the IRS Letter finds that the CHI Plan is a church plan pursuant to 26 U.S.C. § 414(e), not 29 U.S.C. 1002(33).  Because the language of the statutes is similar, the Court understands why Defendants take the position that the Court should follow the IRS's interpretation. However, like the *Kaplan* court, the Court notes that "Defendants have not cited to any precedent showing that Congress delegated authority to the IRS to issue regulations to define terms within the ERISA church plan definition."  *Kaplan*, 2014 WL 1284854, at *10 n.5.  Ultimately, the Court does not give deference to the IRS Letter so the Court need not address the question of the IRS's authority with regards to ERISA.

"reform" the CHI Plan to bring it into compliance with ERISA by doing the following:

- Revising the CHI Plan's documents to reflect that the CHI Plan is a defined benefit plan regulated by ERISA;

- Funding the CHI Plan in accordance with ERISA's funding requirements, disclosing required information to the CHI Plan, participants, and beneficiaries, and otherwise complying with all reporting, vesting, and funding requirements of 29 U.S.C. §§ 1021-31, 1051-61, 1081-85;

- Complying with ERISA's vesting and accrual requirements and providing benefits in the form of a qualified joint and survivor annuity;

- Adopting an instrument governing the CHI Plan that complies with 29 U.S.C. § 1102;

- Complying with ERISA reporting and disclosure requirements, including by filing Form 5500 reports, distributing ERISA-compliant Summary Plan Descriptions, Summary Annual Reports and Participant Benefit Statements, and providing Notice of the CHI Plan's finding status and deficiencies; and

- Establishing a Trust in compliance with 29 U.S.C. § 1103.

*Motion* [#140] at 17; *Am. Compl.* [#82] at 63-64.

Defendants argue that if the Court grants Plaintiff's request for declaratory relief, the remaining relief requested in the Motion should not be granted pursuant to 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1002(33)(D)(i).  Section 1132(a)(3) empowers participants to bring suit:

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).  Defendants argue that this provision requires that all equitable relief be "appropriate," and that to order Defendants to take the steps compelling compliance with ERISA as requested by Plaintiff would be inappropriate because 29 U.S.C. § 1002(33)(D)(i) allows Defendants a period in which to correct the CHI Plan.  *Response*

23

[#154] at 18-19.[10]  Specifically,  29 U.S.C. § 1002(33)(D)(i) states:

> If a plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26 fails to meet one or more of the requirements of this paragraph and corrects its failure to meet such requirements within the correction period, the plan shall be deemed to meet the requirements of this paragraph for the year in which the correction was made and for all prior years.

29 U.S.C. § 1002(33)(D)(i).  This correction period may be set by a court of competent jurisdiction "after a final determination that the plan fails to meet such requirements, . . ., but in any event not less that 270 days after the determination has become final . . . ."  29 U.S.C. § 1002(33)(D)(iii)(II).  Plaintiff argues that the language of 29 U.S.C. § 1002(33)(D)(i) makes clear that the correction period only is available to plans *established and maintained by a church* and that because the CHI Plan does not fall within this category, it is not entitled to the statutory correction period. *Reply* [#164] at 10. The parties provide no case law to support their positions regarding whether the correction period would apply to a plan, like the CHI Plan, that is found to not be established by a church. The Court has not found any such cases either.

As with its analysis of sections A and C, the Court's analysis of section D of the statute must begin "with the language of the statute."  *Barnhart*, 534 U.S. at 450.  The language of section D begins exactly as section A begins: "If a plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches . . . ."  29 U.S.C. § 1002(33)(D)(i).  The Court has already found

---

[10]  Defendants maintain that they could restructure the CHI Plan to comply with the Court's reading of ERISA through various alternatives, including re-establishment of the CHI Plan by a church. *Response* [#154] at 19-20 n.6.

24

identical language to refer only to a benefits plan established by a church and has concluded that the CHI Plan is not such a plan.  *See* Section III.D., *supra*.  The Court will not read identical language to mean one thing in one section of the statute and another thing in a different section of the same statute.  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) ("[T]he normal rule of statutory interpretation [is] that identical words used in different parts of the same statute are generally presumed to have the same meaning.") (citation omitted); *Dep't of Revenue of Ore. v. ACF Indus., Inc*. 510 U.S. 332, 342 (1994) ("[I]dentical words used in different parts of the same act are intended to have the same meaning.") (internal quotation marks and citation omitted).  Accordingly, the Court concludes that, based on a plain reading of the unambiguous language of the statute, section D only allows a correction period for a benefits plan established by a church.  Here, Defendant CHI established the CHI Plan and has admitted that it is not a church, accordingly section D does not apply to the CHI Plan.

This conclusion is consistent with 29 U.S.C. § 1002(33) as a whole.  *Cf. Robinson*, 519 U.S. at 341 (noting that when interpreting a statute the Court considers "the specific context in which the language is used, and the broader context of the statute as a whole."). The plain language of section D allows benefit plans established by churches that fail to meet a requirement of the statute a period of time in which to correct that failure.  A correction period may be appropriate, for example, if the participants in a benefit plan change to non-church employees so that the plan falls out of compliance with 29 U.S.C. § 1002(33)(A). Another example would be if the entity that maintains the plan is involved in a merger that results in it no longer being controlled by or associated with a church or a convention or association of churches, and therefore it falls out of compliance with 29

U.S.C. § 1002(33)(C)(i).  In such circumstances, section D allows for a correction period. *Cf. Health Cost Control v. Fuxan*, 1997 WL 725440, at *2 (E.D. La. Nov. 17, 1997) (finding that because the benefits plan was administered by a third party administrator, the plan was not a church plan and was, therefore, governed by ERISA).  However, the plain language of section D does not anticipate a correction period for a benefits plan that is not "established or maintained . . . by a church or by a convention or association of churches . . . ." 29 U.S.C. § 1002(33)(D)(i).  Because the Court finds that the "statutory language is unambiguous and the statutory scheme is coherent and consistent," the Court's inquiry must come to an end. *Barnhart*, 534 U.S. at 450 (internal quotation marks and citations omitted); *In re Wise*, 346 F.3d 1239, 1241 (10th Cir. 2003).

Defendants' only argument against the equitable relief requested by Plaintiff is that it is not appropriate to grant the relief because Defendants should be allowed a correction period pursuant to section D.  However, as detailed above, the Court concludes that section D is not applicable to the CHI Plan.  Furthermore, as noted above, 29 U.S.C. § 1132(a)(3) empowers a plan participant to obtain "equitable relief (i) to redress such violations [of ERISA or the benefit plan at issue] or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  Accordingly, the Court finds that Plaintiff's request for an order requiring Defendants to reform the CHI Plan to conform with ERISA is appropriate,[11] to the extent the CHI Plan does not comply with ERISA.[12]

---

[11]  The parties do not raise any equitable arguments regarding Plaintiff's request that Defendants be ordered to comply with ERISA.  The Court does not address arguments not raised by the parties.  Similarly, the parties do not address the time frame for Defendants to bring the CHI Plan into compliance with ERISA.  Therefore, the Court takes no position regarding this issue.

[12]  In their Response, Defendants do not argue that the CHI Plan complies with ERISA. Instead, Defendants argue simply that the CHI Plan is exempt from ERISA because it is a church

However, the Court also finds that it is not appropriate for the Court to order Defendants to take specific steps to comply with ERISA at this time.  The parties have provided no evidentiary support for their positions regarding the CHI Plan's compliance or noncompliance with ERISA.  When considering a motion for summary judgment, the Court cannot take the allegations in the Amended Complaint as true nor can it assume facts to be true.   *Bones*, 366 F.3d at 875 ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (citation omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  As a result, the Court will not recommend that the specific relief requested by Plaintiff in subparts 1 through 6 of the Prayer for Relief in the Amended Complaint be ordered at this time.  *See Motion* [#140] at 1 (asking the Court to order "the relief requested in Section A (subparts 1-6) of the Prayer for Relief").

## V.  Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the Motion [#140] be **GRANTED in part** and **DENIED in part**.  Accordingly,

IT IS FURTHER **RECOMMENDED** that the following relief be granted:

1.    The Court enter a declaratory judgment holding that the CHI Plan is not a church plan within the meaning of 29 U.S.C. § 1003(b)(2); and

2.    The Court enter a declaratory judgment that the CHI Plan must comply with ERISA,

---

plan. Defendants' failure to assert that the CHI Plan complies with ERISA strongly suggests that it does not.  Moreover, the Court infers from Defendants' argument that they are entitled to a correction period pursuant to section D that they do not dispute that the CHI Plan does not comply with at least one provision of ERISA.

to the extent that it currently does not comply.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  July 9, 2014                                      BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge