IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01249-REB-KLM

JANEEN MEDINA,

     Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES, a Colorado Corporation,
GERALDINE BEDNASH,
MAUREEN COMER,
RICHARD CORRENTE,
DAVID R. EDWARDS,
KATHERINE GRAY,
BARBARA HAGEDORN,
JAMES HAMILL,
ANTOINETTE HARDY-WALLER,
PHYLLIS HUGHES,
DONALD JONES,
ANDREA J. LEE,
DAVID R. LINCOLN,
KEVIN E. LOFTON,
CHRISTOPHER R. LOWNEY,
ELEANOR F. MARTIN,
MARY MARGARET MOONEY,
LILLIAN MURPHY,
MARY JO POTTER,
PATRICIA SMITH,
EDWARD SPEED,
DEAN SWINDLE,
PATRICIA G. WEBB, and
JOHN AND JANE DOES, 1-10, whose true names are unknown,

     Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion to Dismiss Plaintiffs'**

**Amended Complaint With Memorandum in Support** [#123][1] (the "Motion").  Plaintiff[2] filed a Response [#135] to the Motion and Defendants filed a Reply [#137] in further support of the Motion.  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion has been referred to the undersigned for a recommendation regarding disposition [#130].  The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#123] be **GRANTED in part** and **DENIED in part**.

## I.  Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by . . . a participant[ or] beneficiary [of an ERISA plan] . . . ."

## II.  Summary of the Case

### A.   Procedural Background

Plaintiff initiated this lawsuit on May 10, 2013.  *See generally Complaint* [#1].  On

---

[1]  "[#123]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Recommendation.

[2]  At the time this case was initiated and when the Response was filed, there were multiple plaintiffs.  At this time, the only remaining Plaintiff is Janeen Medina.

October 7, 2013, Defendants[3] filed an Answer [#73].  On November 22, 2013, Plaintiff filed the Amended Complaint [#82], in which she asserts eight claims: (1) a claim for equitable relief pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") § 502(a)(3) against Defendant Catholic Health Initiatives ("CHI"), *Am. Comp.* ¶¶ 130-33; (2) a claim for violations of ERISA's reporting and disclosure provisions against all Defendants[4], *id.* ¶¶ 134-48 ("Count II"); (3) a claim pursuant to 29 U.S.C. § 1082, ERISA's provision relating to minimum funding, against Defendant CHI, *id.* ¶¶ 149-53; (4) a claim pursuant to 29 U.S.C. § 1102 (ERISA § 402), for failure to promulgate written instruments in accordance with the requirements of this provision, against Defendant CHI, *id.* ¶¶ 150-57; (5) a claim pursuant to 29 U.S.C. § 1103 (ERISA § 403), for failure to establish a trust as required by the statute, against Defendant CHI, *id.* ¶¶ 158-61; (6) a claim pursuant to 29 U.S.C. § 1132(a)(1)(A) (ERISA § 502(a)(1)(A)), for  monetary penalties  against all Defendants, *id.* ¶¶ 162-68 ("Count VI"); (7) a claim for breach of fiduciary duty against all Defendants, *id.* ¶¶ 169-84 ("Count VII"); and (8) a claim for declaratory relief that ERISA's church plan exemption violates the establishment clause of the First Amendment against Defendant CHI, *id.* ¶¶ 185-88.   Ultimately, Plaintiff seeks the following relief: (1) a declaratory judgment that the retirement plan at issue, the Catholic Health Initiatives

---

[3]  At the time the Answer was filed the Defendants were: Catholic Health Initiatives, Patricia G. Webb, Carol Keenan, and John and Jane Does 1-20.

[4]  The Amended Complaint brings claims against many individual Defendants who  are alleged to be members of Defendant CHI's Board of Stewardship Trustees, the Human Resources Committee of the Board of Stewardship Trustees, or the CHI & Affiliates Defined Benefit Plan Subcommittee.  *Am. Compl.* [#82] ¶¶ 19-22.

Retirement Plan, Amended and Restated Effective January 1, 2008 (the "CHI Plan")[5], is an employee benefit plan pursuant to 29 U.S.C. § 1002(2) (ERISA § 3(2)), is a defined benefit plan pursuant to 29 U.S.C. § 1002(35) (ERISA § 3(35)), and is not a church plan pursuant to 29 U.S.C. § 1002(33) (ERISA § 3(33)).  As a result, Plaintiff (2) asks the Court to order Defendants to reform the CHI Plans to comply with ERISA in a variety of ways; (3) seeks a declaratory judgment that the church plan exemption to ERISA is an unconstitutional accommodation under the establishment clause of the First Amendment; (4) seeks attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g) (ERISA § 502(g)); (5) seeks taxable costs pursuant to 29 U.S.C. § 1132(g) (ERISA § 502(g)) and 28 U.S.C. § 1920; (6) seeks pre-judgment interest; and (7) asks the Court to enter an order "[a]warding, declaring or otherwise providing Plaintiff[ ] and the Class[6] all relief under ERISA section 502(a), 29 U.S.C. § 1132(a), or any other applicable law . . . ." *Id.* at 63-66.   In response to the Amended Complaint, Defendants filed the instant Motion.

On January 29, 2014, Plaintiff filed her Motion for Partial Summary Judgment [#140]. On June 24, 2014, the Court heard oral argument regarding the Motion and Plaintiff's Motion for Partial Summary Judgment.  *See generally Courtroom Minutes/Minute Order* [#194]; *Transcript* [#196].   On July 9, 2014, the Court entered its Recommendation regarding Plaintiff's Motion for Partial Summary Judgment.   *See generally*

---

[5]  The Amended Complaint refers to the "CHI Plans" but the only specific benefit plan identified by Plaintiff is the Catholic Health Initiatives Retirement Plan, Amended and Restated Effective January 1, 2008.  *See, e.g., Am. Compl.* [#82] ¶¶ 3-4, 9-10, 57-59 (noting that Plaintiff seeks through discovery information to enable her to identify other benefit plans that "fit the definition herein of 'CHI Plans'").  Accordingly, the Court treats Plaintiff's requests for relief in the Motion as being limited to the Catholic Health Initiatives Retirement Plan, Amended and Restated Effective January 1, 2008.

[6]  Plaintiffs' Amended Motion for Class Certification [#121] is pending before the Court.

4

*Recommendation of United States Magistrate Judge* [#199] (the "Recommendation").  In the Recommendation, the Court concluded that the CHI Plan is not a church plan pursuant to ERISA and, therefore, the CHI Plan must comply with ERISA.  *Id.* at 20-21, 27-28.  The Recommendation is pending before the District Judge.

## B.    The Motion

In the Motion, Defendants seek dismissal of the ERISA claims asserted against the Individual Defendants[7] (Counts II, VI, and VII) on the grounds that the individual Defendants are not "plan administrators" of the CHI Plan pursuant to ERISA.  *Motion* [#123] at 6-19.  In addition, all Defendants move to dismiss the claims for discretionary statutory penalties in Counts II and VI that accrued more than one year before November 22, 2013, the date the Amended Complaint [#82][8] was filed, as time-barred.  *Id.* at 6, 19-20.

In support of their argument that Counts II, VI, and VII cannot be brought against the Individual Defendants, Defendants argue that if the CHI Plan is governed by ERISA, the Individual Defendants are not properly classified as "plan administrators."  Defendants argue that 29 U.S.C. § 1002(16)(A)(i) states that "administrator" means "the person

---

[7] The "Individual Defendants" are: Geraldine Bednash, Maureen Comer, Richard Corrente, David R. Edwards, Katherine Gray, Barbara Hagedorn, James Hamill, Antoinette Hardy-Waller, Phyllis Hughes, Donald Jones, Andrea J. Lee, David R. Lincoln, Kevin E. Lofton, Christopher R. Lowney, Eleanor F. Martin, Mary Margaret Mooney, Lillian Murphy, Mary Jo Potter, Patricia Smith, Edward Speed, Dean Swindle, and Patricia G. Webb.

[8] The Motion to Dismiss does not discuss why the filing of the Amended Complaint, as opposed to the original Complaint, should be the relevant date for statute of limitations consideration.  At oral argument, counsel for Defendants referred to this argument as being the "issue that the statute of limitations be no more than one year back from the filing of the Complaint . . . ." *Transcript* [#196] at 9:25-10:1.  While the parties do not address this discrepancy, the Court notes that the date of filing of the original Complaint is the relevant date for statute of limitations purposes.  *See Silverstein v. Fed. Bureau of Prisons*, 559 F.App'x 739, 751 n.13 (10th Cir. 2014) (unpublished decision) ("We apply the statute of limitations to the date of [plaintiff's] initial complaint . . . .").

5

specifically so designated by the terms of the instrument under which the plan is operated," and that the CHI Plan[9] designates the CHI and Affiliates Defined Benefit Plan Subcommittee ("DB Plan Subcommittee") as the plan administrator (the "Designated Plan Administrator"). *Motion* [#123] at 6-7, 12-13.  Defendants state that, while Plaintiff named individuals who are members of the DB Plan Subcommittee as Defendants, it is the committee, not the individual members of the committee, that would be the proper defendant.  *Id.* at 8.  Defendants further argue that the Charter of the CHI & Affiliates Defined Benefit Retirement Plan Subcommittee (the "Charter"), on which Plaintiff relies, is a corporate document, not a plan document.  *Id.* at 13.  Therefore, they argue that the Charter is irrelevant for purposes of determining who the plan administrator is pursuant to ERISA.  *Id.*  Further, they maintain that the Charter does not name a person or entity as the "administrator" of the CHI Plan.  *Id.* at 13-14.  Finally, Defendants argue that the individual members of the Board of Stewardship Trustees ("BOST") and the Human Resources Committee ("HR Committee"), who are also named as Individual Defendants, are not fiduciaries and do not have "plan administrator authority."  *Id.* at 14-15.

Defendants further argue that the individual members of the DB Plan Subcommittee

---

[9] Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment.  *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).  However, a Court may consider documents outside of the complaint on a motion to dismiss in three instances.  First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000).  Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record.  *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).  Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in her complaint.  *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).  Here, Plaintiff refers to both the CHI Plan and the Charter (as defined below) in her Amended Complaint.  *See, e.g., Am. Compl.* [#82] ¶¶ 3-4, 71-72.

are not proper defendants even though the committee is the Designated Plan Administrator. *Id.* at 16-18. Similarly, Defendants maintain that even if the BOST and the HR Committee are plan administrators pursuant to ERISA, their individual members would not be proper defendants. *Id.* at 18-19.

With regard to Plaintiff's claims for discretionary statutory penalties brought in Counts II and VI, Defendants argue that "Plaintiff['s] claims are almost completely time-barred . . . ." *Id.* at 19. Defendants argue that there is a one-year statute of limitations for claims for discretionary statutory penalties under ERISA § 502(c) and that, therefore, to the extent Plaintiff seeks penalties dating back more than one year before the Amended Complaint was filed, those claims must be dismissed. *Id.* at 20.

In her Response, Plaintiff argues that the Individual Defendants are fiduciaries. *Response* [#135] at 1-13. Specifically, Plaintiff argues that the CHI Plan, which identifies the DB Plan Subcommittee as the "Plan Administrator," may not be the sole document under which the CHI Plan is established and maintained. *Id.* at 5. She contends that discovery is designed to allow her to uncover additional documents and that she "need only plausibly plead that other documents bear on the issue" to survive a motion to dismiss. *Id.* (emphasis omitted). Plaintiff maintains that the Charter is a formal legal document that is also an "instrument" under which the CHI Plan is operated. *Id.* at 7. As a result, she argues that the BOST and the HR Committee are charged with plan administrator duties. *Id.* at 7-9.

Plaintiff also argues that the individual members of the committees are proper Defendants because ERISA specifically contemplates that the plan administrator may be a group of people. *Id.* at 10 (citing 29 U.S.C. §§ 1002(9), 1002(16)) (ERISA definitions) and

7

26 C.F.R. § 1.414(g)-1(a) (Internal Revenue Code definition of "plan administrator")).   In addition, Plaintiff avers that the Individual Defendants are liable because they are "functioning fiduciaries."  *Id.* at 14-15.

With regard to the discretionary penalties, Plaintiff agrees that the statute of limitations is one year, but argues that there is nothing to dismiss because "Plaintiff[ ] do[es] not allege any particular period over which the discretionary penalties should be awarded . . . ."  *Id.* at 2.

In their Reply, Defendants argue that it is not premature to dismiss the claims against the Individual Defendants at this stage.  *Reply* [#137] at 2.  In addition, Defendants maintain that "[t]he burden is on Plaintiff[ ] to make plausible allegations," and her argument that she needs additional discovery does not excuse a failure to meet her pleading burden.  *Id.* at 5.  Defendants further argue that the Charter is not a "plan instrument" under ERISA § 3(16)(A) and, therefore, it cannot designate anyone as the plan administrator.  *Id.* at 2-3; *see also id.* at 4 (further arguing that the Charter is not a plan instrument).  Defendants maintain that

> Plaintiff[ ] do[es] not dispute that the plan document specifically designates the DB Plan Subcommittee as the Plan Administrator of the CHI Plan – not the BOST or HR Committee and not any individuals of those committees.  But Plaintiffs have not named the DB Plan Subcommittee as a defendant.  In view of the plain language of section 3(16)(A)(i) of ERISA and the CHI Plan document, there can be no plausible allegation that the BOST, the HR Committee, or any individual is the Plan Administrator.

*Id.* at 3.  Defendants also argue that even if the Charter is a plan instrument, it does not designate any of the Individual Defendants as the plan administrator.  *Id.* at 4-5.  Defendants aver that the DB Plan Subcommittee is the Designated Plan Administrator for the CHI Plan and that a committee can be sued.  *Id.* at 6.  Defendants further maintain that

the individual members of a committee who carry out the functions of the committee are not the proper defendants. *Id.* 6-7. Finally, Defendants argue that Plaintiff has not sufficiently alleged that the Individual Defendants are liable as "functional fiduciaries." *Id.* at 8-10.

## III.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the

9

elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but [the complaint] has not show[n][]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 556 U.S. at 679 (second brackets in original; citation and internal quotation marks omitted).

## IV. Analysis

### A.    ERISA

ERISA "is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans" by subjecting "both pension plans and welfare plans" to federal regulation.  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983).  "[W]hen Congress enacted ERISA it 'wanted to  . . . mak[e] sure that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it.'"  *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375 (1980)) (modifications in original).  To effectuate this goal, "[t]he statute imposes participation, funding, and vesting requirements on pension plans . . . .  [and] sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans."  *Shaw*, 463

U.S. at 90-91.

As noted above, the Court previously concluded that the CHI Plan is subject to ERISA. *Recommendation* [#199] at 27-28. Accordingly, the Court analyzes the Motion within the framework of ERISA.

ERISA defines "administrator" to mean "the person specifically so designated by the terms of the instrument under which the plan is operated" and then provides ways to determine who the plan administrator is if the plan does not designate a plan administrator. 29 U.S.C. § 1002(16)(A). Here, the CHI Plan states that the "Plan Administrator" "shall mean the [DB Plan Subcommittee]." *CHI Plan* [#33-1] at 12. The CHI Plan further states that

> [a]ll members of the [DB Plan Subc]ommittee shall be appointed by the [BOST]. One member appointed by the [BOST] shall be nominated by the ruling board of PorterCare Adventists Health Care System or its successor. Prior to June 28, 2006, the name of the Plan Administrator was the Retirement Committee of Catholic Health Initiatives.

*Id.*

## B.   The Challenged Claims

### 1.   Count II

#### a.   Summary Plan Descriptions

Count II is brought against all Defendants pursuant to 29 U.S.C. § 1024 for "failing to provide Plaintiff[ ] . . . with adequate Summary Plan Descriptions." *Am. Compl.* [#82] ¶ 136. 29 U.S.C. § 1024(b)(1) states that

> The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a)(1) of this title—

(A) within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or

(b) if later, within 120 days after the plan becomes subject to this part.

29 U.S.C. § 1024(b)(1)(A)-(B).

### b.    Annual Report

Similarly, Count II alleges that all Defendants, as the Plan Administrators, have never filed an annual report with the Secretary of Labor nor furnished Plaintiff with a summary annual report and, therefore, have violated 29 U.S.C. §§ 1023, 1024. *Am. Compl.* [#82] ¶¶ 137-40. 29 U.S.C. § 1023 requires that an annual report "be filed with the Secretary in accordance with section 1024(a) . . . ." 29 U.S.C. § 1023(1)(A). 29 U.S.C. § 1023(a)(1) requires the "administrator of any employee benefit plan" file the annual report with the Secretary "within 210 days after the close" of the year. 29 U.S.C. § 1023(a)(1). 29 U.S.C. § 1024(b)(3) requires the "administrator" to "furnish to each participant and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules, for such fiscal year, described in subparagraphs (A) and (B) of section 1023(b)(3)." 29 U.S.C. § 1024(b)(3). Section 1023(b)(3) discusses the financial statement that is required to be included with the annual report filed with the Secretary.

### c.    Minimum Funding Standards (Defendant CHI only)

In addition, Plaintiff avers that Defendant CHI failed to fund the CHI Plan as required by 29 U.S.C. § 1082 and therefore violated 29 U.S.C. § 1021(d)(1) because Defendant CHI, as the employer who established and maintained the CHI Plan, failed to provide a notice pursuant to 29 U.S.C. § 1021(d)(1). *Am. Compl.* [#82] ¶¶ 141-44. 29 U.S.C. § 1082 sets minimum funding standards for plans that are subject to ERISA. Pursuant to 29

U.S.C. § 1021(d)(1),

> [i]f an employer maintaining a plan other than a multiemployer plan[10] fails to make a required installment or other payment required to meet the minimum funding standard under section 1082 of this title to a plan before the 60th day following the due date for such installment or other payment, the employer shall notify each participant and beneficiary . . . of such failure.  Such notice shall be made at such time and in such manner as the Secretary may prescribe.

29 U.S.C. § 1021(d)(1).

### d.    Funding Notices

Plaintiff also alleges that all Defendants violated 29 U.S.C. § 1021(f), because as plan administrators they failed to "provide each participant and beneficiary of the CHI Plan[ ] with the" funding notices under 29 U.S.C. § 1021(f) required when an ERISA plan fails to meet minimum funding requirements.  *Am. Compl.* [#82] ¶ 145-46.  29 U.S.C. § 1021(f)(1) requires that plan administrators provide plan participants and beneficiaries, among others, with annual funding notices that include specific information about the plan, including plan funding, the number of participants, and a description of the benefits included in the plan. U.S.C. § 1021(f).

### e.    Pension Benefit Statements

Finally, Plaintiff maintains that all Defendants did not furnish her with a pension benefit statement as required by 29 U.S.C. § 1025(a)(1).  29 U.S.C. § 1025(a)(1)(B) requires that the "administrator of a defined benefit plan . . . furnish a pension benefit statement" to each participant with a nonforfeitable accrued benefit who is employed by the employer at least once every three years and "to a participant or beneficiary of the plan

---

[10]  Plaintiff alleges that the CHI Plan is "a non-contributory defined benefit pension plan . . . ." *Am. Compl.* [#82] ¶ 58.

upon written request." 29 U.S.C. §§ 1025(a)(1)(B)(i)-(ii).

### 2.    Count VI

Count VI is brought pursuant to 29 U.S.C. §§ 1132(a)(1)(A), 1132(c)(3), and 1132(c)(1).  *Am. Compl* [#82] ¶¶ 163-66.  29 U.S.C. § 1132(a)(1)(A) empowers a plan participant or beneficiary to bring a civil action that seeks the relief provided by § 1132(c). Section 1132(c)(1) states that a plan administrator who fails to comply with § 1021(f) or § 1025(a), among other sections, or "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . within 30 days of such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal . . . ." 29 U.S.C. § 1132(c)(1).  Section 1132(c)(3) provides the same relief against "[a]ny employer maintaining a plan . . . ." 29 U.S.C. § 1132(c)(3).  Accordingly, Plaintiff's request for penalties in Count VI is premised on the alleged breaches contained in Count II.

### 3.    Count VII

Count VII alleges that all Defendants breached their fiduciary duties pursuant to 29 U.S.C. § 1132(a)(2).  29 U.S.C. § 1132(a)(2) empowers a participant or beneficiary, among others, to bring a civil action for relief pursuant to 29 U.S.C. § 1109.  Section 1109(a) states:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).  Plaintiff alleges that Defendants were fiduciaries and breached the duty of prudence and loyalty imposed by 29 U.S.C. § 1104(a)(1) by failing to enforce the provisions of ERISA discussed above in Count II.  *Am. Compl.* [#82] ¶¶ 171-175.

Plaintiff maintains that the "members of the DB Plan Subcommittee as Plan Administrator fiduciaries, . . ., and with respect to CHI, as an employer of employees covered by [the CHI Plan], at all relevant times were parties in interest with respect to the CHI Plan[ ] pursuant to . . . 29 U.S.C. § 1002(14)(A) and (C).  *Id.* ¶ 179.  Plaintiff further alleges that:

> By failing to enforce the funding obligations created by ERISA and owed to [the CHI Plan], Defendants extended credit from the CHI Plan[ ] to CHI in violation of . . . 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known that their failure to enforce the funding obligation constituted such an extension of credit.

> By failing to enforce the funding obligations created by ERISA and owed to the CHI Plan[ ], Defendants used the CHI Plan[']s[ ] assets for CHI's own benefit, when Defendants knew or should have known that their failure to enforce the funding obligations constituted a use of the CHI Plan[']s[ ] assets, in violation of . . . 29 U.S.C. § 1106(a)(1)(D).

> By failing to enforce the funding obligations created by ERISA and owed to the CHI Plan[ ], Defendants used the CHI Plan[']s[ ] assets in CHI's interest in violation of . . . 29 U.S.C. § 1106(b)(1).

> The failure of Defendants to enforce the funding obligations owed to the CHI Plan[ ] has resulted in a loss to the CHI Plan[ ] equal to the foregone funding and earnings thereon.

> The failure of Defendants to enforce the funding obligations owed to the CHI Plan[ ] has profited Defendant CHI by providing it the use of money owed to the CHI Plan[ ] for its general business purposes.

*Id.* ¶¶ 180-84.  In sum, this portion of Plaintiff's Count VII alleges that Defendants violated their fiduciary duties by not funding the CHI Plan as required by ERISA, which resulted in Defendant CHI keeping those funds.

15

29 U.S.C. § 1106 governs transactions between an ERISA plan and a party in interest and/or a fiduciary.  Certain transactions are prohibited such as "lending money or extending credit" to a party in interest, 29 U.S.C. § 1106(a)(1)(B), and a fiduciary dealing "with the assets of the plan in his own interest or for his own account."  29 U.S.C. § 1106(b)(1).

## C.   The Individual Defendants Are Not Plan Administrators

All of Count II except the claim that Defendant CHI failed to fund the CHI Plan as required by 29 U.S.C. § 1082 and therefore violated 29 U.S.C. § 1021(d)(1), *Am. Compl.* [#82] ¶¶ 141-44, is premised on the idea that Defendants are plan administrators. Similarly, Count VI is brought pursuant to § 1132(c)(1), which allows for suit to be brought against a *plan administrator* for failure to comply with certain provisions of ERISA. Accordingly, the Court must first determine whether Defendants are plan administrators pursuant to ERISA.

The Court begins "with the language of the statute."  *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002).  "The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'"  *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).  To do this, the Court considers "the specific context in which the language is used, and the broader context of the statute as a whole."  *Robinson*, 519 U.S. at 341.  "This is 'a holistic endeavor,' taking into account, at a minimum, the 'statute's full text, language as well as punctuation, structure, and subject matter.'"  *Carpio v. Holder*, 592 F.3d 1091, 1098 (10th Cir. 2010) (quoting *United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 455 (1993)).  Ultimately, it is the Court's "charge to give effect to the law

16

Congress enacted." *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 217 (2010). The Court "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted). This is the "cardinal canon" of statutory construction that the Court must consider "before all others." *Id.* at 253. "The inquiry ceases 'if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.''" *Barnhart*, 534 U.S. at 450 (quoting *Robinson*, 519 U.S. at 340); *Conn. Nat'l Bank*, 503 U.S. at 254 ("When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (internal quotation marks and citations omitted). "If, on the other hand, the text is ambiguous—i.e., 'capable of being understood by reasonably well-informed persons in two or more different senses'—we must inquire further to discern Congress's intent." *In re Stephens*, 704 F.3d 1279, 1283 (10th Cir. 2013).

Pursuant to 29 U.S.C. § 1102(1) an employee benefit plan "shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). The statute requires that the

> instrument shall provide for one or more named fiduciaries who jointly and severally shall have authority to control and manage the operation and administration of the plan.
>
> For purposes of this subchapter, the term "named fiduciary" means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

29 U.S.C. § 1102(a)(1)-(2). 29 U.S.C. § 1002(16)(A)(i) provides that under ERISA, "administrator" means "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). The CHI Plan designates

17

the DB Plan Subcommittee as the Designated Plan Administrator.  *CHI Plan* [#33-1] at 12.

As the Tenth Circuit made clear,

> Section 1002(16)(A) provides that if a plan specifically designates a plan administrator, then that individual is *the* plan administrator for purposes of ERISA.  The statutory language is clear and unambiguous, and admits of no other interpretation.  This is not one of those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."  *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982).  We disagree with the First Circuit's assertion that permitting a plaintiff to bring a § 1132(c) claim against his or her employer as the de facto plan administrator is necessary to further congressional intent "that employees have a remedy when they are denied timely information about their ERISA benefits."  *Law*, 956 F.2d at 373. . . .
>
> We therefore reject the expansive definition of plan "administrator" advanced by the First Circuit and plaintiff here, and conclude that because [defendant] was not the administrator designated by the [plan], plaintiff could not assert a § 1132(c) claim against [defendant].

*McKinsey v. Sentry Inc.*, 986 F.2d 401, 404 (10th Cir. 1993) (citations omitted); *see also*

*Thorpe v. Retirement Plan of Pillsbury Co.*, 80 F.3d 439, 444 (10th Cir. 1996) ("The

language of § 1132(c) and § 1002(16)(A)(i) is unambiguous and admits no other

interpretation.  Because the [plan] specifically designates the Board as its administrator,

. . . the Board is the only party liable to Plaintiff under 29 U.S.C. § 1132(c)."); *Lederman v.*

*Analex Corp.*, 2008 WL 2900915 *2 (D. Colo. July 23, 2008) (stating that "[t]he Tenth

Circuit has already held that section 1132[(c)] only refers to the plan administrator's duties"

and further noting that the argument that a "de facto plan administrator" could be held liable

should be rejected) (citing to *McKinsey*, 986 F.2d at 403).

Defendants argue that, while Plaintiff named individuals who are members of the DB

Plan Subcommittee as Defendants, it is the committee itself that is the proper defendant.

*Motion* [#123] at 8.  Plaintiff does not disagree that the CHI Plan identifies the DB Plan

Subcommittee as the Designated Plan Administrator.  *Response* [#135] at 5.  However,

Plaintiff takes the position that multiple documents may establish an ERISA plan.  *Id.* at 6.

She, therefore, argues that the Charter is a formal legal document that governs the CHI

Plan and states that under the Charter, "the BOST and HR Committee are charged with

plan administration functions."  *Id.* at 7.  Specifically, she points to the provision of the

Charter following the statement of the DB Plan Subcommittee's responsibilities that states:

> Notwithstanding the foregoing, the [BOST] or HR Committee may itself
> exercise any of the above duties delegated to the [DB Plan Subc]ommittee
> with respect to the Plans at any time.  In that event, the [DB Plan
> Subc]ommittee shall not exercise any of the authority delegated to it under
> this part in a manner inconsistent with the action of the [BOST] or HR
> Committee.

*Charter* [#39-1] at 3.  Defendants contend that the Charter is not a "plan instrument" under

ERISA and, therefore, the Charter cannot designate a plan administrator.  *Reply* [#137] at

4.

Several courts have examined the question of whether a particular document is a

plan instrument pursuant to 29 U.S.C. § 1102(a)(1).  In *Trustees of Colo. Laborers Health

& Welfare Trust Fund v. Am. Benefit Plan Administrators, Inc.*, No. 04-cv-02630-EWN-

MEH, 2006 WL 2632308 (D. Colo. Sept. 13, 2006), this Court determined that an

administrative services agreement was not a plan instrument.  Citing to the statute, the

Court stated that "[a] plan instrument is a written document that establishes and maintains

an ERISA plan."  *Id.* at *5.  The Court found that there were two such documents but that

the administrative services agreement was not a "plan instrument" under ERISA.  *Id.*  The

Second Circuit has also examined the meaning of "plan instrument."  *See generally Bd. of

Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139 (2d Cir.

1997).  The *Weinstein* court found that "plan instruments" are "the formal legal documents that govern or confine a plan's operations, rather then the routine documents with which or by means of which a plan conducts its operations."  *Id.* at 142.

In another case examining a provision of ERISA that is not in dispute in the instant action, this Court found that § 1024(b)(4)'s "catch-all phrase[ ] 'other instruments under which the plan is established or operated.' . . . include contracts and other documents that direct the affairs of the [p]lan [but] do not include benefits projections or other documents that do not govern plan management, amendment, or administration."  *Phelps v. Qwest Employees Ben. Comm.*, No. 04-cv-02042-LTB-OES, 2005 WL 3280239, at *4 (D. Colo. Dec. 2, 2005) (granting in part and denying in part motion for summary judgment).  The language in § 1024(b)(4) is not identical to the language in 29 U.S.C. § 1102(1), which states that an employee benefit plan "shall be *established and maintained* pursuant to a written instrument."  29 U.S.C. § 1102(a)(1) (emphasis added).  *Phelps* focuses on a provision that includes documents relating to the operation of the ERISA plan that do not necessarily establish the plan.  *See* 29 U.S.C. § 1024(b)(4) ("other instruments under which the plan is established *or operated*") (emphasis added).  The provision at issue here, 29 U.S.C. § 1102(1), requires that to be a "plan instrument" the document must both "establish[ ] and maintain[ ]" the ERISA plan.  29 U.S.C. § 1102(a)(1).  There is nothing ambiguous about this portion of the statute.  The word "and" connotes that both requirements must be met—that to be a plan instrument, the document must meet both requirements.  *Cf. Diamond v. Diehr*, 450 U.S. 175, 182 (1981) ("Unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.") (internal quotation marks and citation omitted).  Therefore, the Court next examines the

20

Charter to determine if it meets the statuary definition of plan instrument.  *Cf. Robinson*, 519 U.S. at 341 ("Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.") (internal quotation marks and citations omitted).

While multiple documents may be plan instruments, the question here is whether the Charter establishes and maintains the CHI Plan and, if it does, whether the Charter designates Defendants as plan administrators.  *Phelps* does not answer this question.  The Court must examine the Charter itself to determine if it is a plan instrument.  Here, the Charter establishes the DB Plan Subcommittee and describes the DB Plan Subcommittee's purpose and responsibilities.  *Charter* [#39-1] at 2-3.  The Charter makes clear that the DB Plan Subcommittee is charged with overseeing the CHI Plan.  Specifically, the DB Plan Subcommittee's role "shall be to support the oversight responsibility relating to the structure/design, operation, administration and compliance of the" CHI Plan.  *Id*. at 2.  The Charter also discusses the composition of the DB Plan Subcommittee, requires at a minimum quarterly meetings of the DB Plan Subcommittee, states the duties of the DB Plan Subcommittee, establishes procedures for DB Plan Subcommittee meetings, requires the DB Plan Subcommittee to review the Charter at least annually, and establishes procedures for committee member transition.  *Id*. at 3-6.  At no point does the Charter establish the CHI Plan.  Accordingly, the Court concludes that the Charter is not a plan *instrument* pursuant to 29 U.S.C. § 1102(1) and the Court need not consider whether the Charter designates Defendants as plan administrators because a plan administrator must be "specifically so designated by the terms of the *instrument* . . . ."  29 U.S.C. § 1002(16)(A)(i).

To the extent Plaintiff believes that "it is plainly inappropriate at the motion to dismiss stage to weigh the evidence and decide that a particular document is the sole document under which a plan is 'established and maintained' . . . or 'operated,'" *Response* [#135] at 5 (emphasis omitted), Plaintiff misunderstands the process by which the Court may reach a conclusion of law based on the undisputed terms of relevant documents.  At this stage, "[t]he court's function . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton,* 173 F.3d at 1236 (citation omitted).  Here, Plaintiff alleges that the DB Plan Subcommittee is the Plan Administrator of the CHI Plan. *Am. Compl.* [#82] ¶¶ 19, 21, 63, 73.  Plaintiff then named as defendants: CHI, the members of the DB Plan Subcommittee, the members of the BOST, and the members of the HR Committee.  *See generally id.*  Plaintiff also alleges that the Charter empowers the BOST and the HR Committee to act as Plan Administrator.  *Id.* ¶ 74.  At one point Plaintiff also alleges that Defendant CHI is the Plan Administrator.  *Id.* ¶ 77.  This theory appears to be based on an alternative argument that if the CHI Plan did not identify a plan administrator, the plan sponsor becomes the default plan administrator pursuant to 29 U.S.C. § 1002(16)(A)(ii).  Based on the language of ERISA, the CHI Plan, and the Charter, the Court concludes as a matter of law that Plaintiff's allegations that Defendants are plan administrators are meritless.  Plaintiff argues that she "need not cite any documents in order to survive a motion to dismiss." *Response* [#135] at 5 (emphasis omitted).  That may be true in certain cases, but in this case Plaintiff's allegations specifically point to the CHI Plan and the Charter to substantiate her contention that Defendants are plan administrators.  Moreover, the term "administrator" is defined by statute.  Plaintiff may make

allegations about the meaning of documents that are not supported by the documents themselves or by the law, but such allegations will not survive a motion to dismiss. Based on the documents and the statute, Plaintiff's allegations are false. Plaintiff further argues that she "need only plausibly plead that other documents bear on the issue." *Id.* (emphasis omitted). Whether this unsubstantiated statement is true or not is irrelevant because Plaintiff does not so plead. *See generally Am. Compl.* [#82]. Because Count II and Count VI rely on Plaintiff's allegation that the Individual Defendants are Plan Administrators pursuant to ERISA, *see Am. Compl.* [#82] ¶ 19 ("Counts II, VI, and VII herein arise against all defendants . . . by virtue of their failure to comply with ERISA as Plan Administrator of the CHI Plan[ ]."), *Response* [#135] at 14 ("Counts II and VI deal with obligations imposed by ERISA on the plan administrator, not on fiduciaries generally."), and the Court concludes that the Individual Defendants are not plan administrators as defined in the statute, the Court respectfully **recommends** that the Motion [#123] be **granted** to the extent it seeks dismissal of Count II and Count VI against the Individual Defendants pursuant to Fed. R. Civ. P. 12(b)(6) and that those claims be **dismissed without prejudice**.[11]

---

[11]   Generally, dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is prejudicial. *Bereton v, Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (stating that "a dismissal [that] operates on the merits of the complaint . . . will [ ] ordinarily be entered with prejudice."); *see also Mariani v. Titeflex Corp.*, No. 13-cv-01720-MSK-KLM, 2014 WL 3402514, *2 (D. Colo. July 10, 2014) ("Generally, dismissal under Rule 12(b)(6) warrants dismissal with prejudice."). However, dismissal with prejudice is only appropriate when amendment would be futile. *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (noting that dismissal with prejudice is appropriate where a complaint fails to state a claim and amendment would be futile). Here, the claims alleged against the Individual Defendants state specifically that they are plan administrators under the terms of the CHI Plan and/or the Charter. *See Compl.* [#82] ¶ 19 ("CHI also reserved to the [BOST] and the [HR Committee] all authority to act as Plan Administrator of the CHI Plan[ ]."), ¶ 64 ("The DB Plan Subcommittee has been designated Plan Administrator by CHI."), ¶ 74 ("The [Charter] also states that the Board or HR Committee may itself exercise any of the duties delegated to the DB Plan Subcommittee . . . . [a]ccordingly, both the [BOST] and the HR Committee have full authority to act as Plan Administrator . . . ."). Because Plaintiff's claims that the Individual Defendants are plan

## D.      Count VII

Count VII is brought pursuant to 29 U.S.C. § 1132(a)(2) for breach of fiduciary duty.

*Am. Compl.* [#82] ¶ 170.  To the extent Plaintiff's argument is premised on the belief that

Defendants are plan administrators of the CHI Plan, *id.* ¶ 172 ("Defendants had the

authority as Plan Administrator . . . ."), ¶ 179 ("as Plan Administrator fiduciaries"), such

argument fails for the reasons stated above in Section IV.C.  However, Plaintiff also argues

that the Individual Defendants are fiduciaries of the CHI Plan because the committees on

which they serve are fiduciaries and the Individual Defendants are functional fiduciaries.

*Response* [#135] at 9-15.

### 1.      Functional Fiduciary Theory

As noted above, Plaintiff argues that members of the various committees have the

same fiduciary duties as the committees.  *Response* [#135] at 9-13.  Count VII alleges that

Defendants breached their fiduciary duties pursuant to 29 U.S.C. § 1132(a)(2).  29 U.S.C.

§ 1132(a)(2) empowers a participant or beneficiary, among others, to bring a civil action for

relief pursuant to 29 U.S.C. § 1109.  Section 1109(a) states:

> Any person who is a fiduciary with respect to a plan who breaches any of the
> responsibilities, obligations, or duties imposed upon fiduciaries by this
> subchapter shall be personally liable to make good to such plan any losses

---

administrators are based solely on her contention that the CHI Plan and/or the Charter reserve
certain duties to the Individual Defendants, and the Court has determined (1) that the Plan does
not designate the Individual Defendants as plan administrators and (2) that the Charter is not an
instrument pursuant to 29 U.S.C. § 1102(1), the claims as pled against the Individual Defendants
for their alleged roles as plan administrators fail as a matter of law.  However, there is a possibility
that Plaintiff could amend in a way that allows her to restate these claims against a proper
defendant.  *See Billinger v. Doe 01-36*, No. 12-cv-01507-CMA-CBS, 2012 WL 5364202 at *2 (D.
Colo. Oct. 31, 2012) ("Because it is possible that Plaintiff may amend his complaint so as  to state
a claim upon which relief may be granted, the Court agrees with the Magistrate Judge that
dismissal should be without prejudice." (citation omitted)).  Accordingly, the Court recommends that
these claims be dismissed without prejudice.

to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

The parties cite to a variety of cases from across the country to substantiate their arguments. In *Confer v. Custom Eng'g Co.*, 952 F.2d 34 (3d Cir. 1991), the Third Circuit held that "when an ERISA plan names a corporation as a fiduciary, the officers who exercise discretion on behalf of that corporation are not fiduciaries within the meaning of section 3(21)(A)(iii), unless it can be shown that these officers have *individual* discretionary roles as to plan administration." *Id.*, 952 F.2d at 37 (emphasis in original) ("[T]he definition of fiduciary liability allows use of the corporate form and does not limit fiduciary status to individuals."). Ultimately, the Third Circuit concluded that plaintiff "failed to demonstrate that either officer, *as an individual*, had discretionary authority or responsibility which gave rise to a fiduciary duty that either or both owed directly to" plaintiff and affirmed the district court's grant of summary judgment. *Id.* at 38 (emphasis in original). However, in *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143 (9th Cir. 2000), *cert. denied* 531 U.S. 1074 (2001), the Ninth Circuit disagreed with *Confer* and stated that "where, as here, a committee or entity is named as the plan fiduciary, the corporate officers or trustees who carry out the fiduciary functions are themselves fiduciaries and cannot be shielded from liability by the company." *Id.* at 1156; *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1459-61 (9th Cir. 1995) (noting that the Ninth Circuit has "rejected the Third Circuit's interpretation in *Confer* that an officer who acts on behalf of a named fiduciary corporation cannot be a fiduciary if he acts within his official capacity and if no fiduciary duties are

25

delegated to him individually.").   The Ninth Circuit's approach follows a Supreme Court decision (that post-dates *Confer*) which found that "ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, see 29 U.S.C. § 1002(21)(A), thus expanding the universe of persons subject to fiduciary duties—and to damages—under § 409(a)."   *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 262 (1993).   The Supreme Court has further made clear that

> [i]n every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the action of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) when taking action subject to complaint.

 *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

> Under this functional approach, a fact-sensitive inquiry into the extent of responsibility and control exercised by [a] defendant [ ] with respect to the [plan at issue] must be undertaken to determine whether [that defendant] exercised sufficient discretionary authority and control to be deemed a fiduciary who can be held personally liable for a breach of fiduciary duties.

*In re Xerox Corp. ERISA Litig.*, 2008 WL 918539, at *5 (noting that determining whether a defendant "actually possessed such authority and control [was] a factual issue not properly resolved pursuant to a motion to dismiss."); *see also David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1130 (10th Cir. 2005) ("Whether a party is an ERISA fiduciary is a mixed question of fact and law.").

"Thus, one can be a fiduciary under ERISA because one is named as a fiduciary or because one functions as a fiduciary."   *In re Xerox Corp. ERISA Litig.*, No. 3:02CV01138(AWT), 2008 WL 918539 *3 (D. Conn. March 31, 2008); *David P. Coldesine, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1131 (10th Cir. 2005) ("That is to say, regardless of the status or title, parties are only plan fiduciaries to the extent they are

performing one of the functions identified in the definition."). Here, the Plan and the Charter empower the DB Plan Subcommittee, among other things, to "[o]versee the administration of the Plan," "review contributions made to the Plan," and "[r]eview claims submissions and make determinations concerning any appeal of a benefit claim denial." *Charter* [#39-1] at 2-3. Further, the Charter explicitly states that the DB Plan Subcommittee is a fiduciary of the Plan and identifies the requirements ERISA places on fiduciaries. *Id.* at 5-6. Neither the Charter nor the Plan address the question of whether the individual members of the committee are also fiduciaries.

The "functional fiduciary" theory is based on the language of 29 U.S.C. 1002(21)(a), which specifies three ways in which a person may be found to be a fiduciary. *See, e.g., Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 909-914 (7th Cir. 2013); *Golden Star, Inc. v. Mass Mut. Life Ins. Co.*, --- F.Supp.2d ---, 2014 WL 2117511, at *3-6 (D. Mass. May 20, 2014). 29 U.S.C. § 1002(21)(A) provides in pertinent part:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). This is a "highly fact specific" determination. *Lalonde v. Textron, Inc.*, 270 F.Supp.2d 272, 277 n.4 (D.R.I. 2003).

Notably, while a determination whether an individual committee member engaged in activities that may be deemed to involve discretionary authority over plan administration or control over plan assets should be determined based on a review of the facts, Plaintiff

27

must at least allege that the particular defendants conducted themselves in such a way. Here, Plaintiff alleges that "[t]he failure of Defendants to enforce the funding obligations owed to the [CHI Plan] has resulted in a loss to the CHI Plan[ ] equal to the foregone funding and earnings thereon, and profited Defendant CHI by providing it the use of money owed to the CHI Plan[ ] for its general business purposes." *Am. Compl.* [#82] ¶ 175.  With regard to the Individual Defendants who are or were members of the BOST and the HR Committee, Plaintiff alleges that they failed "to comply with ERISA as Plan Administrator of the CHI Plan" and that they are or were members of the given committees.  *Id.* ¶¶ 19-20. Plaintiff avers that the BOST "is equivalent to a 'board of directors' as that term is defined in the Colorado Revised Nonprofit Corporation Act."  *Id.* ¶ 43.  Plaintiff further alleges that the BOST "is the Board of Trustees for the CHI Retirement Plan [and] meets quarterly and Trustees can be removed by a majority vote of the other Trustees."  *Id.* ¶ 62.  Plaintiff maintains that the HR Committee "consists of the members of the Executive Committee, except for the CEO, and up to three additional individuals appointed by the Chairperson of the" BOST.  *Id.* ¶ 62.  Plaintiff offers no specific allegations regarding the members of the BOST and the HR Committee's responsibilities or any discretion they had or have with regard to the CHI Plan.

With regard to the DB Plan Subcommittee members, Plaintiff maintains that the individually named Defendants "were members of the DB Plan Subcommittee as of the filing of the Complaint in this action and/or they are members today."  *Id.* ¶ 21.  She further alleges that the committee "meets quarterly and consists of four to five voting members [and] is to act by agreement of a majority of its members, by vote at a meeting or in writing without a meeting."  *Id.* ¶ 65.  Plaintiff states that "*the Plan Administrator* has the power and

duty to make and enforce rules and regulations that it deems necessary or proper for administration of the plan, to interpret the plan, to compute retirement benefits payable under the plan, to authorize disbursements from the trust, and to perform any and all duties required of the administrator under applicable law." *Id.* ¶ 67 (emphasis added). Plaintiff also alleges that *the Plan Administrator* has various other duties such as making "actuarial valuations of the liabilities" of the Plan and estimating "the amount of benefit payments which the plan will be required to make . . . ." *Id.* ¶¶ 68-70.

In Count VII, Plaintiff alleges that "[t]he failure of Defendants to enforce the funding obligations owed to the [CHI Plan] has resulted in a loss to the CHI Plan[ ] equal to the foregone funding and earnings thereon, and profited Defendant CHI by providing it the use of money owed to the CHI Plan[ ] for its general business purposes." *Id.* ¶ 175. The only allegation that may fall within ERISA's definition of a fiduciary is the allegation in paragraph 67 that the "Plan Administrator," the DB Plan Subcommittee, has authority to "authorize disbursements from the trust." *Id.* ¶ 67; *Estate of Simpler*, 407 F.3d at 1132 ("[T]he statute provides that '*any authority or control*' over the management or disposition of plan assets is sufficient to render fiduciary status." (emphasis in original)).

Based on the language of the statute, the Charter, and Plaintiff's allegations, the Individual Defendants are not fiduciaries under subpart (ii) of § 1002(21)(A) because there are no allegations that they render investment advice. 29 U.S.C. § 1002(21)(A)(ii) ("he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so . . . ."). Similarly, Plaintiff's allegations do not substantiate a claim that the Individual Defendants are fiduciaries pursuant to subpart (i) ("he exercises any discretionary authority

29

or discretionary control respecting management of such plan "). However, based on the language of the Charter and Plaintiff's allegations, it is possible that if the individual members of the DB Plan Subcommittee have the same fiduciary duties as the committee of which they are members, they may be functional fiduciaries pursuant to subpart (iii) (the individual "exercises any authority or control respecting management or disposition of its assets"). Because there are no allegations that any Individual Defendant, absent membership on the DB Plan Subcommittee, meets the statutory definition of fiduciary found in § 1002(21)(A), to the extent the Motion seeks dismissal of Claim VII against the Individual Defendants who are not members of the DB Plan Subcommittee, the Court respectfully **recommends** that the Motion [#123] be **granted** and that those claims be **dismissed without prejudice** as to those Defendants.

### 2. Theory That Fiduciary Obligation of Committee is Attributable To Individual Committee Members

With regard to the Individual Defendants who are or were members of the DB Plan Subcommittee, it is important to note that assuming *arguendo* that the committee's fiduciary status may be attributed to them, the allegation that the DB Plan Subcommittee as Plan Administrator has authority to "authorize disbursements from the trust," *Am. Compl.* [#82] ¶ 67, is not necessarily sufficient to establish that they *are or were* fiduciaries, it is merely enough to avoid dismissal at this stage of the litigation. A determination of fiduciary status would rest on the facts surrounding the individuals' functions. *See, e.g., Pegram*, 530 U.S. at 225-26 ("Thus, [ERISA] does not describe fiduciaries simply as administrators of the plan, or managers or advisers. Instead, it defines an administrator, for example, as a fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan." (citing 29

30

U.S.C. § 1002(21)(A)); *Estate of Simpler*, 407 F.3d at 1133 (noting that "performing this function [of signatory] in name only is likely insufficient [to render one an ERISA fiduciary]" but finding that defendants were ERISA fiduciaries because they were "signatories in practice as well as in name.").

In support of her argument that the committee members are fiduciaries by virtue of their membership on the committee, Plaintiff points to several cases.  First, she relies on *Eaves v. Penn*, 587 F.2d 453 (10th Cir. 1978) for the proposition that "members of the investment or administrative committee are certainly fiduciaries since they exercise discretionary authority or control over plan management and asset disposition." *Response* [#135] at 10 (quoting *Eaves*, 587 F.2d at 458).  However, this argument is circular because it relies on the specific duties discussed in the statute that creates fiduciary obligations to argue that *membership* on a committee creates a fiduciary obligation.[12]

Second, Plaintiff relies on *In re Enron Corp. ERISA Litigation*, 284 F.Supp.2d 223 (S.D. Tex. 2003) for the proposition that "plaintiffs can sue committees and their individual members for fiduciary breach." *Response* [#135] at 100 (citing to *id.* at 617).  In that case, the court relied specifically on Texas state law when determining that the members of an "unincorporated association," like the committees at issue in that case, could be named as defendants. *Id.* at 617 (relying on Tex. Bus. & Com. Code § 36.10 (2002), Tex. R. Civ. P. 28, Tex. Rev. Civ. Stat. Ann. Arts. 6133, and Texas state law when holding that "Plaintiffs

---

[12] The same issue arises with regard to Plaintiff's reliance on *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1498 (10th Cir. 1995) (noting that two defendants were alleged to be named fiduciaries and all three defendants were alleged to exercise discretionary authority or control with respect to plan management).  The other cases relied on by Plaintiff are not binding on this Court and/or are inapposite for various reasons.  The Court has analyzed each but will not discuss each of them herein.

may sue both the unincorporated association and its members in Texas."). Pursuant to Fed. R. Civ. P. 17(b), a federal statutory claim that names an entity that is not an individual or a corporation is determined "by the law of the state where the court is located . . . ." Fed. R. Civ. P. 17(b)(3). Plaintiff points to no Colorado law that allows for suit against "unincorporated associations" in Colorado or that establishes that the DB Plan Subcommittee is an unincorporated association.

In addition, Plaintiff relies on a decision from New York for the proposition that "individual members of committees could be named as defendants." *Response* [#135] at 10. In that case, the plaintiff brought suit against various committees and the individual members for breach of fiduciary duty. The plaintiff alleged that because the defendants "continu[ed] to offer [company] stock as part of the [p]lan when they knew or should have known of [the company's] impending decline," they breached their fiduciary duties under ERISA. *Veera v. Ambac Plan Admin. Comm.*, 769 F.Supp.2d 223, 225 (S.D.N.Y. 2011). The *Ambac* court found that the allegations regarding the committees and the individual defendants were sufficient to withstand a motion to dismiss. *Id.* at 231.

While neither of these cases are binding on this Court, the *Ambac* and *Stewart* decisions are Plaintiff's strongest support for the idea that committee members, by virtue of their membership on DB Plan Subcommittee alone, may be fiduciaries. In *Stewart*, discussed above, the Ninth Circuit states: "Moreover, where, as here, a committee or entity is named as the plan fiduciary, the corporate officers or trustees who carry out the fiduciary functions are themselves fiduciaries and cannot be shielded from liability by the company." *Stewart*, 207 F.3d 1143, 1156.

Conversely, Defendants argue that binding case law dictates that the Court find that

32

mere membership on a committee does not confer fiduciary status on an individual. *Reply* [#137] at 6-7.  They rely on *Averhart v. US West Mgmt Pension Plan*, 46 F.3d 1480, 1489-90 (10th Cir. 1994).  In *Averhart*, the Tenth Circuit held that the secretary of a committee which was named as the *plan administrator* "could not be held personally liable for civil penalties under § 1132(c) because has was not an 'administrator' of the [plan] within the meaning of that section and § 1002(16)(A)(i)." *Id.* at 1489.  The court stated that the "designation of the committee as administrator is conclusive for purposes of applying § 1132(c) and cannot be expanded or modified to include [the secretary], even if he, as plaintiff alleges, 'acted as administrator, was the contact person for the [committee], and was responsible for (and took responsibility for) the tardy production of the requested documents.'" *Id.*  Section 1132(c) governs a plan administrator's duties.  Here, Count VII is brought pursuant to 29 U.S.C. § 1132(a)(2), which allows a plan participant or beneficiary to bring suit pursuant to § 1109 against "[a]ny person who is a *fiduciary* with respect to a plan who breaches any of the responsibilities, obligation, or duties imposed upon fiduciaries . . . ." 29 U.S.C. §§ 1132(a)(2), 1109 (emphasis added); *see also Am. Compl.* [#82] ¶ 170. This distinguishes the instant case from *Averhart*.  *Averhart* addresses whether a member of a committee designated by a plan as the *plan administrator* is, therefore, a default plan administrator.  Here, the issue is whether membership on a committee that is alleged to be tasked with duties that under the statute would make it a *functional fiduciary* is sufficient to allege that the committee members are functional fiduciaries.  As discussed in detail above, the statute's definition of "administrator" is very specific while the definition of "fiduciary" requires a fact-specific inquiry in many instances.     As noted above, Plaintiff does not allege any actions by any individual committee members that, under the statute, could be

33

relied on to argue that any Individual Defendant is a fiduciary.  However, Plaintiff does allege that the DB Plan Subcommittee engages in an activity that could bring it within the language of 29 U.S.C. § 1002(21)(A)(iii); *see Am. Compl.* [#82] ¶ 67 (allegation that the Plan Administrator has authority to "authorize disbursements from the trust").  As the Supreme Court made clear in *Twombly* and *Iqbal*, a plaintiff's claims must be sufficiently pled under Fed. R. Civ. P. 8(a)(2) to survive a Rule 12(b)(6) motion to dismiss.  *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677-79.  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)).

Here, Plaintiff's sole allegation on which its argument that the members of the DB Plan Subcommittee are fiduciaries relies is: "the Plan Administrator has the power and duty to . . . authorize disbursements from the trust . . . ." *Am. Compl.* [#82] ¶ 67.  Plaintiff alleges that Defendants were fiduciaries and breached the duty of prudence and loyalty imposed by 29 U.S.C. § 1104(a)(1) by failing to enforce the provisions of ERISA discussed above in Count II.  *Am. Compl.* [#82] ¶¶ 171-175.  Therefore, to the extent there is some legal basis for Plaintiff to believe that the Individual Defendants who are members of the DB Plan Subcommittee are fiduciaries by virtue of their membership on the committee, Plaintiff has met her obligation to state a claim against those Defendants.

While not binding authority, Ninth Circuit case law holds that "where . . . a committee or entity is named as the plan fiduciary, the corporate officers or trustees who carry out the fiduciary functions are themselves fiduciaries and cannot be shielded from liability by the company." *Stewart*, 207 F.3d at 1156.  At this stage of the case, this is enough legal

support to sustain Plaintiff's position that her allegations regarding the DB Plan Subcommittee's actions are attributable to the members of that committee and that they, therefore, may be functional fiduciaries pursuant to 29 U.S.C. § 1002(21)(A)(iii).  Plaintiff therefore may bring claims against them under 29 U.S.C. § 1132(a)(2), which allows a plan participant or beneficiary to bring suit pursuant to § 1109 against "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligation, or duties imposed upon fiduciaries . . . ." 29 U.S.C. §§ 1132(a)(2), 1109; *see also Am. Compl.* [#82] ¶ 170.  Accordingly, to the extent the Motion seeks dismissal of Claim VII asserted against the Individual Defendants who are members of the DB Plan Subcommittee, the Court respectfully **recommends** that the Motion [#123] be **denied** as to those Defendants.

## D.    Statute of Limitations

Finally, all Defendants move to dismiss the claims for discretionary statutory penalties in Counts II and VI that accrued more than one year before November 22, 2013, the date the Amended Complaint [#82][13] was filed, as time-barred.  *Id.* at 6, 19-20.  With regard to the discretionary penalties, Plaintiff agrees that the statute of limitations is one year, but argues that there is nothing to dismiss because "Plaintiff[ ] do[es] not allege any particular period over which the discretionary penalties should be awarded . . . ." *Id.* at 2. There is no dispute that a one-year statute of limitations applies.  *See, e.g., Damon v. Unisys Corp.*, 841 F.Supp. 1094, 1097 (D. Colo. 1994) (applying one-year statute of limitations to claim brought pursuant to 29 U.S.C. § 1132); *Cleary v. Boeing Co. Emp.*

---

[13]   As noted in footnote 8, *supra*, the date the original Complaint was filed is the relevant date for statute of limitations purposes.  *See Silverstein*, 559 F.App'x at 751 n.13 ("We apply the statute of limitations to the date of [plaintiff's] initial complaint . . . .").

*Health & Ben. Welfare Plan*, No. 11-cv-00403-WJM-BNB, 2013 WL 3943633, at *15 (D. Colo. July 31, 2013) (applying one-year statute of limitations from the filing of the complaint to claim brought pursuant to 29 U.S.C. § 1132).   However, Plaintiff is correct to note that the Amended Complaint does not allege that the discretionary penalties sought pursuant to § 1132 in Counts II and VI should be awarded for any particular period.  *See Am. Compl.* [#82] ¶¶ 144, 146,148, 165-68.  Therefore, at this time the Court respectfully **recommends** that the Motion [#123] be **denied without prejudice** to the extent it requests that the claims for discretionary statutory penalties in Counts II and VI that accrued more than one year before the Complaint was filed be dismissed.

### V.  Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the Motion [#123] be **GRANTED in part** and **DENIED in part**.  Accordingly,

IT IS FURTHER **RECOMMENDED** that the Motion [#123] be **GRANTED** to the extent it seeks dismissal of Count II and Count VI against the Individual Defendants and that those claims be **DISMISSED without prejudice** as to the Individual Defendants.[14]

IT IS FURTHER **RECOMMENDED** that the Motion [#123] be **GRANTED** to the extent it seeks dismissal of Count VII against the Individual Defendants who are not members of the DB Plan Subcommittee and that Count VII be **DISMISSED without prejudice** as to the Individual Defendants who are not members of the DB Plan Subcommittee.

---

[14]  The Court notes that Count II and Count VI are also asserted against Defendant CHI and Defendants do not seek dismissal of these claims to the extent they are asserted against Defendant CHI.  Accordingly, should the District Judge adopt this Recommendation, these claims will remain as to Defendant CHI.

IT IS FURTHER **RECOMMENDED** that the Motion [#123] be **DENIED** to the extent it seeks dismissal of Count VII against the Individual Defendants who are members of the DB Plan Subcommittee.

IT IS FURTHER **RECOMMENDED** that the Motion [#123] be **DENIED without prejudice** to the extent it requests dismissal of the claims for discretionary statutory penalties in Counts II and VI that accrued more than one year before the Complaint was filed.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  August 13, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge